**People of the State of Illinois, Appellee, v. Joseph D'Argento and Michael Carracci, Appellants.**

**Gen. No. 51,862.**

First District, Second Division.

February 11, 1969.

Rehearing denied March 21, 1969.

 

Bellows, Bellows & Magidson, of Chicago, for appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Michael Stevenson, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Defendants, Joseph D'Argento and Michael Carracci, were indicted and tried together under indictments charging them with the crimes of burglary and attempt murder. The jury failed to reach a verdict on the attempt murder charge and, on motion of the State, that indictment was stricken with leave to reinstate. The jury returned verdicts of guilty on the burglary charge on which judgments were entered. D'Argento, who had a record of prior convictions, was sentenced to a term of fifteen to twenty years and Carracci to a term of four to ten years in the penitentiary. They appeal.

The evidence shows that between 9:30 and 10:00 p. m. on December 3, 1963, night watchman Bert Rolan was conducting a routine check of the thermostat in a vacant furniture store next door to the Baer Brothers & Prodie clothing store located at 4132 West Madison Street in Chicago. Rolan noticed a man in a kneeling position on the floor of the furniture store and, with his gun drawn, ordered the man out of the premises onto Madison Street toward a police squad car parked a short distance away. Rolan described the man as being the same height and weight and as having the same type and color of hair and type of build as D'Argento, and clad only in shoes,

trousers and a short sleeve white shirt. The temperature outdoors was around twenty-five degrees above zero.

As Rolan and the man arrived on Madison Street, a 1964 Ford automobile occupied by three men approached traveling westerly on Madison and slowed at the curb near the place where Rolan and his captive were standing. Someone in the rear seat of the automobile fired shots at Rolan, and someone in the automobile hollered, "Come on, Joe, come on," and "Back off, copper." Rolan's captive broke away and entered the Ford automobile which then sped away westerly on Madison Street. A police car traveling easterly along Madison executed a U-turn and pursued the Ford. Rolan returned to the rear of the furniture store where he found a long steel bar, two heavy hammers, chisels, and a truck half filled with clothing later identified as the property of Baer Brothers & Prodie. Further investigation revealed a large hole in the common wall between the vacant furniture store and Baer Brothers' store.

Chicago Police Officer Gilbert Broderick testified that he witnessed the proceedings outside the furniture store and pursued the Ford automobile in his squad car after the Ford sped westerly on Madison Street. After a three-block chase, the Ford went out of control attempting a turn onto Kildare Avenue and collided with a parked automobile. Four men got out of the Ford and ran west on Madison. Officer Broderick stopped his vehicle in front of the fleeing men, and got out and fired a warning shot. Three of the men ran into a nearby doorway where they were later apprehended by the officer; the fourth man escaped. Two of those arrested were the defendants, and the third man was identified as James Johnson. At the time of the arrests, D'Argento was wearing a short sleeve white shirt and no jacket. A search of the Ford automobile revealed an inoperative radio of the type used to monitor police calls and an assortment of heavy tools. Also recovered from the automobile was a loaded pistol and two spent cartridge casings.

Mr. Peter Varvitsiotes testified that he was in the process of closing his restaurant on west Madison Street when he heard what sounded like gunshots coming from the outside. When he turned to see what was happening, he observed the Ford automobile, traveling west on Madison, swerve and strike an automobile parked in front of his establishment. He observed four men get out of the Ford and run west on Madison pursued by a police car. The police car stopped and the officer alighted from the vehicle and fired a warning shot. The men darted into a nearby doorway and were later arrested by the officer. The witness identified D'Argento as one of the three men arrested who the witness testified was wearing a short sleeve white shirt. Both defendants were cut about the face and were bleeding.

Defendant Carracci testified that for a few days prior to December 3, 1963, he had been kept home by a lingering cold. On December 3rd, D'Argento telephoned his home and invited him to dinner. After dinner, the pair went to a bowling alley where they stayed approximately forty-five minutes. They left the bowling alley with the intention of going to Carracci's home, but decided to stop at a small restaurant near Kostner Avenue and Madison Street for a cup of coffee. As they were walking east on Madison they heard a crash and what sounded like the backfire of an automobile. Some men came running by and in a matter of seconds a police officer approached defendants and told them to get into a nearby doorway and to raise their hands. James Johnson was brought over and placed beside the defendants; Carracci testified that neither defendant had known Johnson prior thereto. He also testified that at the time of the arrest, D'Argento had been wearing a jacket over his white short sleeve shirt, but that an officer removed the jacket after the arrest. Carracci further stated that he and D'Argento received the cuts on their faces when they were beaten at the police station during interrogation.

39

The trial of this cause had been in progress approximately two weeks and the trial judge called counsel for both sides into chambers. The judge informed them that a juror that day told him he had received a telephone call from an anonymous caller who identified himself as "Mustache" and who told the juror, "I want you to find those fellows guilty." The trial judge was advised by the juror that he told no other juror of the call, nor would he do so in the future, and also that the call would have no effect on his impartiality as a juror. Defense counsel moved for a mistrial, after which the assistant state's attorney moved that the juror who had received the call be withdrawn and replaced with an alternate juror, to which defense counsel objected. The assistant state's attorney then moved that the juror in question be brought into chambers for questioning by all concerned, but defendants again stood on their motion for a mistrial which was ultimately denied.

Defendants' first contention is that the trial court erred in denying their motion for a mistrial for the reason that the fact that a juror had been approached by an anonymous telephone caller rendered a fair trial by an impartial jury impossible, and for the further reason that defendants were denied their constitutional rights to a public trial and to be present at all stages of the proceedings against them by the *in camera* examination of that juror by the trial judge without their or their counsel's presence.

 The fact that there is an unauthorized communication to a juror does not, of itself, render a fair trial by an impartial jury impossible. It is necessary to show that the unauthorized communication in some way prejudiced the defendant. People v. Berry, 18 Ill2d 453, 165 NE2d 257.

In People v. Williams, 38 Ill2d 115, 230 NE2d 224, the trial court allowed the jurors to telephone their homes and the calls were monitored by a bailiff. The family of

40

one of the jurors pressured him because of his service on the jury and the court refused to grant a mistrial on that ground. Defendant there, as did defendants here, refused the court's offer to withdraw the juror in question and replace him with an alternate. The court, on appeal, affirmed defendant's conviction after noting that there was no evidence that defendant was in any way prejudiced by the incident.

■ ■ A trial judge has a broad discretion in determining whether a mistrial will be declared. People v. Ray, 77 Ill App2d 166, 222 NE2d 176. At the time the motion for the mistrial was made, the trial had been in progress for two weeks. Defendants were offered two alternatives in remedying the incident of the anonymous telephone call, and the trial judge was assured by the juror that his impartiality would not be affected by the call. There is no showing that defendants were in any way prejudiced by the call, and we are of the opinion that the trial judge did not abuse his discretion in denying their motion for a mistrial.

The cases cited by defendants in support of their position are distinguishable on their facts. People v. Kawoleski, 313 Ill 257, 145 NE 203, involves a statement made by a deputy bailiff in charge of the jury in the presence of the jury, to the effect that it should take only a matter of minutes to find defendants guilty. In People v. Tilley, 406 Ill 398, 94 NE2d 328, a disorderly woman stated in the presence of the jury that she would free defendant if she were on the jury, after first having made disparaging remarks about one of the bailiffs in charge of the jury. See also People v. Murawski, 394 Ill 236, 68 NE2d 272, People v. Hryciuk, 5 Ill2d 176, 125 NE2d 61, and People v. Gambino, 12 Ill2d 29, 145 NE2d 42, all of which involve newspaper articles.

■ Defendants also contend that they were denied the constitutional rights to a public trial and to be present at all stages of the proceedings against them

41

when the trial judge interrogated the juror in question out of their or their counsel's presence. The State made a motion to bring the juror into chambers so that all parties concerned could examine him concerning the incident. However, defendants, represented by able and experienced counsel at trial, chose to stand on their motion for a mistrial, thereby waiving their rights in this regard. Defendants also declined the offer to withdraw the juror in question and to replace him with an alternate juror. A review of the record as to this aspect of the case reveals that the trial judge gave careful attention to the matter and afforded defendants all opportunity to protect their rights in this regard.

Defendants' cases cited in support of their position are not in point. In State v. Wroth, 15 Wash 621, 47 P 106, the trial judge, at the request of the jury, entered the jury room where the jury were deliberating. No such situation is presented in the case at bar. In Shoultz v. State (Fla), 106 So2d 424, a Florida statute requiring that the defendant be present during all jury examinations was in force at the time the trial judge privately conferred with a juror about the case; the defense was not informed of this conference until after the verdict was returned. Here, on the other hand, the defense was informed of the conference between the trial judge and the juror during the trial and was offered alternatives to rectify any possible harmful effect the incident may have had, which offer was refused.

██ Defendants' second contention is that the State's instruction on flight was "directory" in nature, in that it instructed the jury that flight was an established fact rather than a finding which they may or may not derive from the evidence. That instruction reads:

"The Court instructs the jury that while flight from the scene of a crime does not, in and of itself, prove guilt, if it is of such a character that it indicates an attempt to avoid capture and thus shows a con-

sciousness of guilt on the part of the defendant, it may be considered with all the other evidence in the case as a factor tending to show guilt."

Also given to the jury were the following two instructions on flight submitted by the defendants:

"The Court instructs the jury that flight from the scene may be as consistent with innocence as with guilt and that it is not always dictated by impulse or purpose to escape the consequences of acts done or changes to be made. If the flight is unexplained it may permit an inference of guilt but it has no such significance when the conduct of the accused is equally, or more, consistent with some other hypothesis."

. . . . . .

"The Court instructs the jury that the circumstance of flight, where proved, raises no legal presumption that the defendants are guilty of the offenses charged against them. The fact of flight is a circumstance which may be considered by the jury as tending to prove guilt, but it must be considered in connection with all the other evidence in the case."

It is clear from a consideration of all three instructions, which the jury considered as a series (People v. Epping, 17 Ill2d 557, 162 NE2d 366), that the effect of the "directory" tone of the State's instruction was tempered by the instructions submitted by the defendants. Although IPI presently recommends that no instruction be given on the matter of flight, the recommendation did not exist at the time of this trial. IPI—Criminal 3.03.

Neither the case of People v. Biella, 374 Ill 87, 28 NE2d 111, nor the case of People v. Morris, 9 Ill2d 359, 137 NE2d 840, support defendants' position. Biella was concerned with an instruction which assumed a controverted fact to be true. Morris involved an instruction which

43

■■■■■■■

assumed a confession to have in fact been made although the defendant denied having made it.

Defendants finally contend that certain remarks made during trial by the assistant state's attorney were prejudicial. We disagree. A consideration of the statements referred to, although better left unsaid by the assistant state's attorney, reveals that they were not of a prejudicial nature. Furthermore, each of the statements was objected to by the defense, the objections were sustained and the remarks were ordered stricken from the record and the jury admonished not to consider them.

For these reasons the judgments are affirmed.

Judgments affirmed.

LYONS, P. J. and McCORMICK, J., concur.