THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FOUNT MERRILL, Defendant-Appellant.

(No. 11707; ▮▮▮▮▮▮▮▮▮

Fourth District—April 10, 1974.

CRAVEN, J., dissenting.

John F. McNichols, Deputy Defender, of Springfield (Robert Kennedy, Assistant Appellate Defender, of counsel), for appellant.

Paul R. Welch, State's Attorney, of Bloomington (John A. Beyer, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:

■■ The circuit court of McLean County sentenced the defendant to 8 months in the Illinois State Penal Farm following a jury verdict finding the defendant guilty of aggravated battery. The defendant contends that the indictment is insufficient because it fails to allege an essential element of the crime of aggravated battery, that is, that it was "without legal justification." Under the supreme court opinion in *People v. Harvey*, 53 Ill.2d 585, 294 N.E.2d 269, that issue is now neither tenable nor debatable. The indictment was valid.

The first trial of the defendant in this case resulted in a mistrial. After the People had rested and one witness for the defense had testified, a juror was observed talking with that defense witness in the hall after the court had recessed for the day. On the following morning, this matter was called to the court's attention in chambers and after some discussion, the court asked the lawyers to excuse themselves and had the bailiff bring the juror into chambers where the court conducted an interrogation which was recorded on tape. Thereafter the court suggested that he had two alternatives, (1) to declare a mistrial, and (2) by stipulation to complete the case with 11 jurors. The State's Attorney said he favored the first for this and other reasons and the defendant stated they would not complete the trial with 11 jurors. The court then stated: "Since neither of you are interested in doing that, then I guess the only alternative we have is to mistrial [sic] the matter". Defendant objected to that procedure for the record and later specifically grounded that exception on the in camera interrogation of the juror on the grounds that the interrogation was conducted outside the presence of the defendant and his attorney, and further stated that he was thus deprived of observing the demeanor of the juror during the examination. The jury was discharged and then the tape was played back for the benefit of both lawyers. Thereafter the defense made a motion in the nature of a motion in bar based on double jeopardy and it was denied.

In *People v. D'Argento*, 106 Ill.App.2d 36, 245 N.E.2d 501, the trial judge was advised the juror had received an anonymous telephone call and was told "I want you to find these defendants guilty". The judge talked to the juror in chambers and was advised by the juror that he had told no other juror of the call nor would he do so in the future and that the call would have no effect on his impartiality as a juror. The State's Attorney moved that this juror be withdrawn and replaced with an alternate juror. The defendants moved for a mistrial on the ground that they had been deprived of constitutional rights to a public trial and to be present at all stages of the proceedings when the in camera examination of the juror was conducted by the judge. The State then made a motion to bring the juror into chambers so that all parties concerned could examine him concerning the incident. Defendants objected and chose to stand on their motion for a mistrial. The appellate court held by so doing they waived their right. The State also moved to withdraw a juror and replace him with an alternate—an offer which the defendants refused. *D'Argento* does not precisely fit our facts.

In the case we consider, the State called the judge's attention to the witness-juror conversation and after a discussion between the judge and both attorneys, defendant's counsel suggested that the judge call the

juror into chambers and this he did after asking both counsel to withdraw. The record indicates that the juror was well acquainted with the witness but really only passed the time of the day with him and the case on trial was not mentioned. The judge asked her, "Now, are you able to state to me at this point unequivocally that your conversation with Mr. Slayback will not bear on the issues in this case in any way?" Answer: "No, it will not, but I would like to ask you just one thing, if I could be excused from this Jury?" The judge then stated, "No, you cannot because you have been sworn in as a juror". The witness also said that it would result in a· hardship at home and stated "And too, after ·prayer and deep meditation, I can't hardly conscientiously go on with it. * * * [B]ut sometimes, you know, God speaks to you, did you know that? * * * And He sometimes speaks pretty clearly. And I really feel that, I don't know, I will go on with this one case, if you want me to, but I am just * * *." The court then stated, "Well, do I understand what you are telling me now is that you feel that you have made up your mind in this case one way or another?" Answer: "Well, probably so".

The trial court then sent the juror back to the jury room and then called in the lawyers and stated that he had but two alternatives. The State insisted upon a mistrial and the defendant refused to accept the court's suggestion that they stipulate for a continuance of the trial by an 11-man jury. The State then indicated that there were enough things in the record in the way of conduct, questions, etc., of defense counsel "that I feel the jury at this point might be prejudiced sufficiently so that I am asking for a mistrial." Defense counsel then stated, "I * * * would not consent to go with a Jury of 11. * * * I am inclined to think Mrs. Powell is a juror that I would want on there, I really don't know * * *. I would just like to go on, Judge." The court then said, "Well, the difficulty with going on is this, Mr. Light [defense counsel], in a civil case the Court can go on, and if the Court later looks at it in reflection and determines that there was prejudice against the Plaintiff, then you can grant a new trial. In a criminal case, if there is prejudice against the State and the verdict is not guilty, there is no way you can go, see?"

It. is at once apparent that direct communication between the .trial judge and the jury or a juror except in open court in the presence of the attorneys in either a civil or criminal case no matter how innocently done lays a seed bed for error. It is apparent from this record that the defendant made the original suggestion that the court interrogate the juror. The court asked counsel to withdraw and taped the conversation. The procedure thus followed was objected to by neither the State nor the defendant. Under the circumstances thus shown the sole issue is to

apply the proper test in determining whether or not this defendant in the second trial was placed in double jeopardy. If he was, the trial court erred in denying the defendant's motion to bar a second prosecution.

This case is readily distinguishable from *United States v. Jorn,* 400 U.S. 470, 27 L.Ed.2d 543, 91 S.Ct. 547, where a divided court held that the defendant had been placed in double jeopardy contrary to the fifth amendment to the United States Constitution when the trial court acted precipitously in determining that the government's witnesses had not been wholly advised of the constitutional rights against self-incrimination and a plurality of the court concluded that under those circumstances the trial judge had failed to exercise a sound discretion in determining whether or not there was a manifest necessity for the sua sponte declaration of the mistrial. There, as we view it, the sole responsibility for the mistrial rested with the trial judge. Three members of the Supreme Court dissented and set forth many circumstances where a trial judge may discharge a jury and order a new trial without triggering any double-jeopardy problem.

■■ In an opinion recently handed down by the United States Supreme Court on February 27, 1973, *Illinois v. Somerville,* 410 U.S. 458, 35 L.Ed. 2d 425, 93 S.Ct. 1066, the court appears to erode the doctrine pronounced in *Jorn* and appears to return to the basic concept of double jeopardy stated in *United States v. Perez,* 22 U.S. (9 Wheat.) 579 (1824), in the context of a declaration of a mistrial over a defendant's objection. *Somerville* is a 5-4 decision. The Supreme Court would appear to return to the position that a rigid formula is inconsistent with the guiding principle of the *Perez* decision. It cites with approval *Gori v. United States,* 367 U.S. 364, 6 L.Ed.2d 901, 81 S.Ct. 1523, wherein it is stated:

> "Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment." (367 U.S. at 368.)

Discovery by the judge during the trial that "one or more members of the jury might be biased against the government *or* the defendant" has been upheld to warrant discharge of the jury and direction of a new trial. (*Wade v. Hunter,* 336 U.S. 684, 93 L.Ed 974, 69 S.Ct. 834.) And so it is here. In the case at bar the court inquired of the juror whether or not she felt "that you have made up your mind in this case one way or another". Answer: "Well, probably so". Patently this does not affirmatively indicate one way or another nor a profound conviction one way or another. It is apparent that the State's Attorney thought this juror

was adverse. It is equally apparent that defense counsel thought this juror was possibly friendly. Within the meaning of *Wade* the trial court apparently felt that a new trial would best serve the ends of justice. We cannot say on this record that after ascertaining the viewpoint of the juror the trial judge was motivated for any reason other than to ensure a fair trial to both sides. In *Wade*, 336 U.S. at 689, the court stated:

> "* * * And there have been instances where a trial judge has discovered facts during a trial which indicated that one or more members of the jury might be biased against the Government or the defendant. It is settled that the duty of the judge in this event is to discharge the jury and direct a retrial. What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments."

The events in this trial which unfortunately brought about the mistrial were participated in by the prosecution, the defendant and the judge. Defendant's objection to the mistrial at the time was only "for the record". To allow a later plea of double jeopardy to a second trial to stand under such circumstances is to use the double jeopardy provision of the United States Constitution not as a shield to protect the defendant, but to allow the defendant to profit by his own suggestions to the court and by his plea after ascertaining that the particular juror was as he. believed, favorable to him and not the unbiased juror that the law contemplates. We do not hold that the defendant consented to the mistrial. We do say he cooperated in bringing it about and thus he should be subordinated to the public's interest in fair trials designed to end in just judgments. This was the result here obtained and the judgment of the trial court should be and it is hereby affirmed.

Error is assigned on refusal to give certain tendered defense instructions as to the defendant's diabetic condition. In the form presented, we do not regard such refusal as reversible error.

Affirmed.

TRAPP, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

In this case, after the prosecution had rested and after the defense had called and finished with the first witness, the court recessed for the day. Upon the following day, the State's Attorney brought to the court's attention that on the day before, after the first defense witness testified, one of the jurors had spoken with the witness in the corridor. Following

a conference between the court and counsel, the court determined to question the juror privately without the presence of counsel. During that conference, the juror related that the conference in the corridor with the witness was merely an exchange of pleasantries and she indicated a long standing acquaintance with the witness.

After the exploration as to the conversation between the juror and the witness, the juror then initiated a conversation as to whether she could be excused from the jury. She discussed an illness of her husband and the fact that she had a handicapped daughter at home. She also mentioned that she had read an article concerning the case. Upon inquiry of the court as to whether she had her mind made up on the case, she answered, "Well, probably so."

Thereafter, contrary to the wish of defense counsel, and in accordance with the indicated preference of the State's Attorney, the trial judge declared a mistrial and discharged the jury. It is clear from the record that the mistrial was declared not because of the conversation between the juror and the witness, but because of ancillary matters discovered during the course of the inquiry as to that conversation. In substance, there was a second voir dire examination.

This case in my opinion is governed by the rules announced in *United States v. Jorn* (1971), 400 U.S. 470, 27 L.Ed.2d 543, 91 S.Ct. 547. In the *Jorn* case, the court cited and quoted from *United States v. Perez* (1824), 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165, and concluded that a jury should be discharged from giving any verdict only upon a showing of manifest necessity and as required by the ends of justice. The authority of the trial judge to act ought to be used with the greatest caution only under urgent circumstances and for very plain and obvious causes.

I am not persuaded that the case of *Illinois v. Somerville,* cited in the majority opinion, so "erodes" the holding in *Jorn* so as to permit of affirmance here.

The concluding paragraph in *Somerville* reads as follows:

> "The determination by the trial court to abort a criminal proceeding where jeopardy has attached is not one to be lightly undertaken, since the interest of the defendant in having his fate determined by the jury first impaneled is itself a weighty one. *(United States v. Jorn, supra.)* Nor will the lack of demonstrable additional prejudice preclude the defendant's invocation of the double jeopardy bar in the absence of some important countervailing interest of proper judicial administration. *Ibid.* But where the declaration of a mistrial implements a reasonable state policy and aborts a proceeding that at best would have produced a verdict that could have been upset at will by one of the parties, the

512

defendant's interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice. *Wade v. Hunter, supra.*" 410 U.S. at 471.

This record does not suggest the existence of any factor that would have permitted a verdict by the jury as originally impaneled to be upset at will by either of the parties. In the absence of such factor, the defendant's interest in proceeding to verdict is not outweighed by the competing and equally legitimate demand for public justice.