THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS SYKES, Defendant-Appellant.

First District (2nd Division)   No. 85—3697

Opinion filed September 22, 1987.

624

Paul S. Biebel, Jr., Public Defender, of Chicago (Karen A. Popek, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Bonnie Meyer Sloan, and Anthony J. Carballo, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BILANDIC delivered the opinion of the court:

Defendant, Thomas Sykes, was convicted by a jury for aggravated kidnapping and unlawful restraint. He was sentenced on the aggravated kidnapping charge to an extended term of imprisonment of 30 years in the Illinois Department of Corrections. Defendant appeals his conviction and sentence.

On April 13, 1984, at about 8:30 a.m., the victim, age 10, was walking to school. As she approached a playground, a man she had never seen before came up to her and asked where her parents were. She identified the man as the defendant. After she told defendant she could not talk to strangers, he asked her if she wanted some candy or money and asked her name. She ignored defendant. Defendant then grabbed her arm, dragging her into an alley. She testified that defendant threatened to kill her if she screamed and that he pulled a gun from his sock and put it to her head.

The victim testified that defendant pulled her through two or three alleys until they reached a partially vacant apartment building. At this point, defendant encountered Lark Branch, the manager of the building, and represented the victim as his niece. Lark denied defendant access to the building.

Defendant then pulled her down the street. Branch, suspicious of defendant, followed. Upon seeing another man across the street, the victim yelled for help. Defendant ran off.

The victim described defendant as wearing a. light tan jacket, brown shoes, black pants, brown hat, and having brown eyes. She also stated that he did not have a beard or mustache. At trial, she identified the jacket defendant was wearing as that worn by the man who abducted her.

On May 3, 1984, Branch saw defendant walking down the street. This was the first time Branch had seen the defendant since the incident. Branch called the police and together they found defendant and he was arrested.

The next morning, the victim viewed a lineup in the presence of her mother and Detective Jack Stewart. She identified defendant as her abductor. Prior to trial, a hearing was held on defendant's motion to suppress identification testimony on the ground that the lineup was unconstitutionally suggestive.

Stewart testified at the hearing that there were five participants in the lineup, including defendant, who was in the second position. Defendant wore a beige or tan jacket in the lineup, while the other participants wore jackets which were black, brown, or blue. Four of the five men in the lineup, including defendant, had some facial hair. After argument, the trial court found that the lineup was not unduly suggestive and the motion was denied.

The victim testified at trial that she recognized the defendant because of his face, not the jacket. She stated that she was looking at defendant's face most of the time during which he pulled her through the alleys and down the street.

Lark Branch also testified concerning the occurrence. Prior to his testimony, the trial court granted defendant's motion *in limine* to bar any testimony that would refer to Sykes as a "vagrant" who was "hanging around" the apartments in Branch's building. The court also granted another motion to bar Branch from testifying about an alleged incident in which defendant supposedly tried to rob an elderly woman in the building.

During his testimony, however, Branch testified that he had "[p]ut him [defendant] out of a vacant apartment *** he was trying to sleep in one time." He also stated, "[A]nd then when I put him out of the apartment, next day some tenants were moving out and they got him from somewhere to help ***. Then two weeks after that he tried to stick up a lady." At this point, defendant objected. The court sustained the objection.

The State also presented the testimony of another victim at trial for the purpose of showing *modus operandi*, identification and intent. Prior to trial, defendant moved to preclude the admission into evidence of other crimes by defendant. The State indicated that they intended to introduce in their case in chief evidence of three other alleged crimes by defendant. After argument, the court allowed only the evidence from the case involving the victim, concluding that there was "a similarity of facts and circumstances that would indicate a behavioral pattern that is unique." The court found that the alleged facts in both involved the abduction of 10-year-old black girls in the same neighborhood, in the proximity to some school. The court also noted that in one case, the victim was taken to a vacant apartment, while in another, the victim was taken to an abandoned building.

Defendant renewed his motion prior to the testimony of this witness at trial. The court denied this motion.

The witness testified that at about noon, on April 3, 1984, she began to walk home from school. As she was crossing an alley, a man she had never seen before grabbed her by the arm, put a gun to her head, and told her that he would kill her if she screamed. She identified that man as the defendant both at a lineup and in court. She testified that defendant was wearing a light brown jacket, blue jeans, a cap, and had a light mustache and bumps on his face as if he was growing a beard.

Defendant pulled her through the alley, across a vacant lot and into a building. Defendant then took her to an abandoned apartment and ordered her to take off her clothes. She took off all her clothes except her stockings, which the defendant removed.

At this point, there was a noise in the hallway and defendant went out to the door. The girl then put her pants and coat on, grabbed her shoes, and climbed out the fire escape.

The witness testified that upon returning home, she told her mother what happened and the police were called. The police, the girl, and her mother returned to the apartment, where her clothing was recovered.

Defendant then presented his defense. His girlfriend testified that on the day in question, defendant was with her in their apartment. Defendant's sister testified that on the day of the alleged attack of the other victim, defendant was with her at their mother's home.

At the close of the evidence, the jury found defendant guilty of aggravated kidnapping and unlawful restraint. Judgment was entered only on aggravated kidnapping, with unlawful restraint merging into the aggravated kidnapping conviction. Defendant was sentenced to an extended term of imprisonment of 30 years in the Illinois Department

of Corrections and now appeals his conviction and sentence.

## I

■ Defendant asserts that his conviction for aggravated kidnapping must be reversed because the State failed to prove beyond a reasonable doubt the "secret confinement" element of the charged offense.

The jury found defendant guilty of the aggravated kidnapping count, which alleged that he "knowingly and secretly confined [the victim], a child under the age of thirteen years, against her will."

"Kidnapping occurs when a person knowingly: (1) and secretly confines another against his will." (Ill. Rev. Stat. 1983, ch. 38, par. 10—1(a)(1).) A kidnapper, within the meaning of the statute, is guilty of the offense of aggravated kidnapping when he takes, as his victim, a child under the age of 13 years. (Ill. Rev. Stat. 1983, ch. 38, par. 10—2(a)(2).) "Secret confinement," the gist of kidnapping, must be proved beyond a reasonable doubt. (*People v. Mulcahey* (1977), 50 Ill. App. 3d 421, 425, 365 N.E.2d 1013, *aff'd* (1978), 72 Ill. 2d 282, 381 N.E.2d 254.) Secret confinement may be shown by proof of either the secrecy of confinement or the place of confinement. 72 Ill. 2d 282, 285, 381 N.E.2d 254.

Defendant contends that the victim was simply not confined in any place or any thing. She was not "shut in," "kept in," "enclosed within bounds," or "imprisoned." He states that although she may have been detained or restrained from going to her intended destination, as to constitute the offense of unlawful restraint as the jury so found, she was not "confined" anywhere. Moreover, defendant asserts, assuming *arguendo* that confinement was sufficiently established, the State nonetheless failed to prove that such confinement was "secret."

Illinois reviewing courts have frequently discussed what proof is necessary to establish the "secret confinement" element of the charged offense. In such cases, the victim has clearly been "confined" or enclosed within something, most commonly, a house or a car. See, e.g., *People v. Mulcahey* (1978), 72 Ill. 2d 282, 381 N.E.2d 254 (victim bound to a chair in her own home); *People v. Bishop* (1953), 1 Ill. 2d 60, 114 N.E.2d 566, *cert. denied* (1953), 346 U.S. 916, 98 L. Ed. 412, 74 S. Ct. 278 (car); *People v. Siegal* (1935), 362 Ill. 389, 200 N.E. 72 (basement, car and garage); *People v. Landis* (1966), 66 Ill. App. 2d 458, 214 N.E.2d 343 (car).

■ In the instant case, the victim simply was not confined or enclosed within any place or any thing. The testimony presented at trial indicates that defendant grabbed her by her right arm as she was

walking near a playground. He pulled her into an alley and began walking north with her. They proceeded through two or three alleys until they reached Woodlawn Avenue and then continued down Woodlawn Avenue for two or three blocks. Upon reaching the partially vacant building, defendant conversed with Lark Branch, who denied them entry. Defendant and the victim then continued down the street until the victim yelled for help and defendant ran off.

The foregoing fails not only to establish the "confinement" envisioned by Illinois courts, but also fails to establish the "secret" component of the statute.

"Secret" has been variously defined as "[c]oncealed; hidden; not made public." (*People v. Mulcahey* (1978), 72 Ill. 2d 282, 285, 381 N.E.2d 254.) In the instant case, at no time was the victim "concealed, hidden, or not made public" during the entire incident.

Accordingly, since the State failed to prove that the victim was "secretly confined," defendant's conviction for aggravated kidnapping must be reversed.

## II

■■■ Defendant contends that he was denied a fair trial by the admission of evidence regarding the aggravated kidnapping of the other victim. The State maintains that the evidence presented was strikingly similar to the crimes committed against the victim and properly admitted to show defendant's *modus operandi*, identity and intent.

Where evidence of other crimes is relevant to and tends to show an issue in the case, such as motive, intent, identity, absence of mistake, or common design, it may be admissible. (*People v. Barbour* (1982), 106 Ill. App. 3d 993, 1001, 436 N.E.2d 667, *appeal denied* (1982), 91 Ill. 2d 572.) Evidence of another crime may be used only when the other crime has some threshold similarity to the crime charged. (*People v. Bartall* (1983), 98 Ill. 2d 294, 456 N.E.2d 59.) Although the common features may be insufficient when considered individually, they may yield a distinctive combination if considered together. (*People v. Houseton* (1986), 141 Ill. App. 3d 987, 992, 490 N.E.2d 1354.) Further, the purposes for which evidence of other crimes may be admissible are not mutually exclusive; evidence of another crime may fall within several of them. *People v. Triplett* (1981), 99 Ill. App. 3d 1077, 1082, 425 N.E.2d 1236, *appeal after remand* (1984), 122 Ill. App. 3d 1159, 475 N.E.2d 299, *rev'd* (1985), 108 Ill. 2d 463, 485 N.E.2d 9.

In the instant case, the crimes committed against the two victims

shared similar characteristics. Both victims were 10-year-old girls, abducted in broad daylight, during school hours, while in close proximity to school. Each was grabbed by the arm and dragged into an alley. Each victim testified that defendant pointed a gun at her head and told her he would kill her if she screamed. The gun was described as black, shiny and about five inches long by one victim, and silver and about five inches long by the other victim. Each girl identified the defendant as the man who abducted her and identified defendant's jacket as that worn by her abductor. Each girl was taken to an apartment building of vacant apartments. Although the buildings were different, they were located a block or two away from each other. Further, each abduction occurred within a 10-day period.

■■ The jury was instructed that the evidence of the other crime was received solely on the issue of the defendant's identification, intent, motive and design and was to be considered only for that limited purpose. Therefore, in light of the strong similarities between the two offenses, admission of the other crime evidence was proper.

■■ Defendant, however, asserts that even if some evidence regarding the other incident was properly admissible, the trial court erred in allowing extensive detail regarding that crime.

It is well settled that even where some evidence of another crime is competent, the prosecution is not allowed to put on a trial within a trial by means of detailed evidence of the other crime. *People v. Bartall* (1983), 98 Ill. 2d 294, 456 N.E.2d 59.

In the instant case, the State presented four witnesses in regard to the other incident: the victim herself, her mother, the officer answering the call, and the detective conducting the lineup at which she identified the defendant. Defendant contends that the testimony of the four witnesses about the other victim's escape, "her tearful arrival home, the subsequent recovery of her clothing in an abandoned apartment, and the corroboration of her in-court identification of Mr. Sykes, as well as the extensive details of the actual offense itself, was irrelevant to and wholly obscured any valid purpose the other crime evidence may have had."

■■ We agree that it was not necessary to conduct a mini-trial of the prior incident in order to establish sufficient acts from which defendant's identity, intent and motive and design in the incident might be inferred. "[F]or the sake of economy of judicial time, we advise against such detailed evidence of other offenses." (*People v. McKibbins* (1983), 96 Ill. 2d 176, 187, 449 N.E.2d 821, *cert. denied* (1983), 464 U.S. 844, 78 L. Ed. 2d 136, 104 S. Ct. 145.) However, we cannot say that the detailed evidence in this case constituted prejudi-

cial error.

## III

██ ██ Defendant contends that he was prejudiced by a prosecution witness' testimony which indicated that he had been involved in other criminal conduct, and therefore, his conviction should be reversed. Defendant argues that the prosecution testimony of Lark Branch that on a previous occasion he had seen defendant when he put defendant out of a vacant apartment where defendant was trying to sleep was unduly prejudicial. Defendant also argues that Branch's testimony that defendant had previously tried to rob a lady was unduly prejudicial.

The State maintains that defendant has waived this issue since defendant did not object when Branch stated that he previously saw defendant when he put him out of a vacant apartment. Furthermore, defendant did not raise the issue regarding either statement in his post-trial motion.

"Failure to make a timely objection at trial to the admission of evidence operates as a waiver of the right to consider the question on review." (*People v. Beasley* (1982), 109 Ill. App. 3d 446, 449, 440 N.E.2d 961.) Moreover, failure by a defendant to raise an issue in his post-trial motion for a new trial constitutes a waiver of that issue. (*People v. Lucas* (1981), 88 Ill. 2d 245, 250, 430 N.E.2d 1091.) However, the waiver rule is not absolute, and error that rises to the level of plain error may be considered by a reviewing court despite the defendant's failure to preserve properly the record for review. (*People v. Baynes* (1981), 88 Ill. 2d 225, 230, 430 N.E.2d 1070.) The doctrine of plain error may be invoked in criminal cases where the evidence is closely balanced or where the error was of such magnitude that the accused was denied a fair trial. *People v. Lucas* (1981), 88 Ill. 2d 245, 251, 430 N.E.2d 1091.

██ We do not consider the evidence to be so closely balanced as to constitute a basis for the application of the plain error doctrine; nor do we find the error of such magnitude so as to deny defendant a fair trial. Defendant has, therefore, waived these issues.

## IV

██ ██ Defendant maintains reversible error occurred when a witness for the prosecution, while on the stand during a sidebar conference, had unauthorized communication with the jury.

During the testimony of Detective Stewart, a sidebar conference was held pursuant to a defense objection. Counsel for both sides no-

ticed that Stewart was talking to the jurors. After the testimony, Stewart was asked, outside the presence of the jury, if he had spoken to the jurors. He said that he merely stated: "I don't think it is fair that they go over there." At this point, defendant moved for a mistrial arguing that the comment could have reflected adversely on the defense lawyer in that she had requested the sidebar. Defendant further noted that this remark may have affected the detective's credibility in that the jurors saw him as a nice person. The court, however, denied the motion for mistrial noting that the jury had been instructed prior to trial as to the purpose of sidebar conferences and that the comment was not in any way directed at the defense alone, but at all of them. The court stated to the jury:

> "As I explained to you at an earlier time, I am there to hear the attorneys about issues of law. When I hear them, I make a decision, and I rule upon that issue. You hear all relevant evidence in the case. So, there is nothing unfair or improper about that. What is improper is for a witness to make comments to the jury. And those comments must be disregarded. It is for you to decide this case only on the sworn evidence that you hear from the witness stand about what the parties, witnesses and the parties [*sic*] know about this case.
>
> And I will ask a question to all of you: are there any of you that cannot continue to deliberate fairly in this case because of the comment of Detective Stewart?
>
> (No response)
>
> Do all of you believe that you can decide the case based on the law and facts as you did earlier?
>
> (A chorus of yes's)"

It is well settled that in order for a jury verdict to be set aside because of an unauthorized communication with the jury, it is necessary for the defendant to show prejudice. (*People v. D'Argento* (1969), 106 Ill. App. 2d 36, 40, 245 N.E.2d 501.) The trial court has broad discretion in determining whether to declare a mistrial. *People v. Knippenberg* (1979), 70 Ill. App. 3d 496, 502, 388 N.E.2d 806, *appeal denied* (1979), 79 Ill. 2d 615.

In the instant case, defendant was not prejudiced by Detective Stewart's comment to the jury. The jury was made well aware of the fact that the comment was improper. The jury was also made aware of the purpose of sidebar conferences both before and after the comment was made. Moreover, as the trial court recognized, the comment was not in any way directed at defense counsel alone, but rather at all of them, including the assistant State's Attorneys and the judge

himself. Furthermore, the jurors all indicated that the comment would not affect their ability to deliberate fairly and decide the case on the law and the facts. Accordingly, the trial court's discretion will not be disturbed.

## V

■■ Defendant contends that the lineup in which he was identified by the victim was unconstitutionally suggestive and that the trial court erred when it admitted into evidence lineup identification testimony and an in-court identification of defendant.

■■ Evidence of pretrial identifications of an accused by a witness must be excluded at trial only where both the procedure was unnecessarily suggestive and there was a substantial likelihood of misidentification. (*People v. Hamilton* (1977), 54 Ill. App. 3d 215, 217-18, 369 N.E.2d 377.) In determining whether a pretrial confrontation was unnecessarily suggestive, courts must look to the totality of the surrounding circumstances. (*Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967.) It is the defendant's burden to establish that the pretrial confrontation was impermissibly suggestive. *People v. Blumenshine* (1969), 42 Ill. 2d 508, 511, 250 N.E.2d 152.

■■ In the present case, the lineup viewed by the victim clearly was not unduly suggestive. Defendant and the four other participants in the lineup had similar physical characteristics, including size, build, age, complexion and facial hair. Also, the participants' clothing was not strikingly dissimilar. Each of the participants in the lineup wore a jacket. Although defendant was the only person in the lineup with a light brown jacket, it clearly was not the type of clothing that would attract undue attention or great attention, as the trial court correctly recognized. Moreover, defendant was not required to keep his jacket on during the lineup. Furthermore, the victim stated that she recognized defendant by his face and denied that her identification of defendant resulted in any way from viewing defendant's jacket or other clothing.

Based on our decision in this case, it is unnecessary to address defendant's remaining arguments.

In light of the foregoing, defendant's conviction for aggravated kidnapping is vacated and the cause remanded to the trial court for resentencing on the unlawful restraint conviction.

Affirmed in part; vacated in part and remanded.

STAMOS and HARTMAN, JJ., concur.