THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHESTER CLARK, Defendant-Appellant.

Second District   No. 2—87—0056

Opinion filed April 7, 1988.—Rehearing denied May 20, 1988.

Michael J. Ventrelle, of Schiller Park, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Chester Clark, was indicted for and was found guilty by a jury in Du Page County of possession of a controlled substance (hydromorphone) with intent to deliver. (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(b)(11).) He appeals, contending (1) he was not proved guilty beyond a reasonable doubt; (2) the jury was improperly instructed; (3) he was denied his right to a trial by a fair cross-section of the community; and (4) the court abused its discretion in allowing comments and testimony concerning his involvement in other crimes. We affirm.

Illinois State Police special agent Richard Pott testified he was on duty on June 25, 1986, operating undercover, when he received a phone call in the late morning or early afternoon. The caller identified himself as "Chester." Pott met Chester face-to-face two times subsequent to that and spoke with him about five or six times more. He recognized the voice as belonging to Chester Clark, the defendant.

The defendant told Pott he had heard that Pott could supply him with some pills. A meeting was arranged for the following day at a restaurant in the village of Oakbrook Terrace. Pott was accompanied by Agent Nowaczyk and four or five other officers provided surveillance of the meeting. Pott and Nowaczyk sat down and ate; they observed the defendant enter the restaurant and sit in a booth. Pott approached the defendant, they identified themselves to each other, and the defendant did not object to Nowaczyk joining them.

Defendant asked Pott if Pott could supply him with Dilaudid, morphine, Ritalin, "T's," "Blues," and pharmaceutical cocaine. Pott said he could not supply him with morphine, Ritalin or pharmaceutical cocaine. Over defendant's objection and motion to strike the reference, Pott was allowed to testify that the defendant said he "usually sells heroin and cocaine and he would like to sell the pills because it is a much cleaner business."

Defendant then asked Pott to supply him with the price for Dilaudid, which are pills normally prescribed by doctors for extreme pain or for terminally ill cancer patients. Pott responded the price would be $15 per pill. Over defendant's objection and motion to strike, Pott was allowed to testify the defendant told him that he "was a wholesaler and would be selling to the other drug dealers and that he needed a better price because he would only be making $7 on each pill." Pott then agreed to a $10-per-pill price and said the more defendant would purchase, the cheaper the price would be.

Defendant stated he would take 3,000 Dilaudids and an equal number of any other controlled substance Pott could obtain. Pott

wrote out a price list; Dilaudid was $10; Ritalin was $2 a pill, Talwin and "Benamin" [sic] ("T's and Blues") were $250 a pair (based on the other prices quoted, and with reference to expert testimony received in an unrelated case, *People v. Hunter* (1984), 124 Ill. App. 3d 516, 521, we believe it is likely the $250 price per pair for T's and Blues is a typographical error in the record). Over objection, Pott testified the defendant said it was a good price and gave Pott a telephone number to call when Pott had the products. Pott and the defendant shook hands and left the restaurant.

Pott had four or five telephone conversations with the defendant after that meeting. Over defendant's objection, Pott testified that during the last conversation defendant told Pott he wanted 1,000 Dilaudids on Thursday and 2,000 on Friday. A meeting at a motel in Elmhurst was arranged for July 10.

On that date at the motel, Pott and Nowaczyk met with defendant. Pott had obtained the pills to sell to the defendant from the Illinois State Police Crime Lab. The pills were packaged 100 to a bottle, the bottles were sealed, and the bottles were inside a small cardboard box. Defendant stated the money was downstairs in a van with another person and that that person wanted to see a sample pill. Pott opened a bottle of pills and gave one pill to the defendant. The defendant in turn took the pill downstairs to the van.

When the defendant returned to the room, he had a paper bag with money in it. Over defendant's objection, Pott identified the bag which defendant had told him contained $12,000. Over defendant's further objection, Pott testified the defendant stated the man in the van "had shorted him $3,000," but that Pott's $10,000 was in the bag.

Pott removed the money from the bag and gave it to Nowaczyk to be counted. Defendant said Nowaczyk should just take out $2,000 and give it to him and that the rest of the money was then theirs. Afterward, with regard to the 10 bottles of Dilaudid, Pott testified:

> "A. I don't recall if I placed the bottles into the box or if Mr. Clark did, but Mr. Clark was given the box containing ten bottles of Dilaudid. Mr. Clark then asked me to hand him the bag that the money had come in. I handed Mr. Clark the bag. He took the box containing the ten bottles, closed it; put it inside of the bag and was sitting in the chair holding the bag."

Upon a prearranged signal, the defendant was arrested, and the Dilaudid was seized by Agent Nowaczyk. Pott identified a videotape recording and transcript of the narcotics transaction to which he had testified.

In chambers, defendant moved for a mistrial as a result of the court having allowed Pott to testify about the defendant's statements concerning his being a wholesaler and usually selling cocaine and heroin. Determining that the defendant's statements were probative of his intent as to the instant offense, the court denied the motion.

The jury was then shown the videotape taken of the transaction in the motel room as testified to by Agent Pott. The court verbally instructed the jury that evidence of the defendant's statements that he was a wholesaler and usually sold heroin and cocaine was to be considered solely for the limited purpose of establishing his intent in the instant cause. The jury later also received a written instruction on this point.

Richard Nowaczyk, special agent for the Department of State Police, testified consistently with Pott's testimony as to the events which transpired. Nowaczyk testified he looked out the window after the defendant left the motel room with the sample pill and saw him approach the driver's side of a blue van with Illinois license plate No. 88541RV or 88541RB. The defendant appeared to hand something to the driver of the van. Nowaczyk testified that later, after he counted the money in the room, the defendant put the box of Dilaudid bottles into the paper bag in which the money had been and held the bag as it was sitting on the table. Nowaczyk testified the police did not intend to let the defendant keep the box of pills.

Glenn Leonard, an agent of the division of criminal investigation of the Department of Illinois State Police, testified that he participated in the arrest of the defendant. After defendant was advised of his *Miranda* rights, he told Agent Leonard that he intended to sell the drugs "to someone else or other parties who were going to sell them or resell them on the streets." Leonard also testified he participated in the search of a blue van, which was registered to Willie Morehead, license plate number 88541RV on July 11, 1986. A search of the van resulted in the recovery from an air-conditioning vent of one small yellow pill with the letter "K" stamped on one side. Leonard testified it was his understanding from another officer that the defendant had given one yellow pill to the driver of this van. Leonard also testified that the pill found in the van was believed to be the same pill. On cross-examination, Leonard stated that when he entered the room at the motel to effect the arrest, the defendant was sitting at a table adjacent to the wall and that there was a brown paper bag on the table.

Illinois Department of State Police Agent Robin Listhartke testified to the receiving and handling of the pills and money after the

defendant's arrest had taken place, and Illinois Department of State Police Agent Leonard Richard testified concerning his picking up of various of the evidentiary exhibits used during the trial.

Deborah Juricic, a forensic scientist employed by the Department of State Police at its Bureau of Forensic Sciences Laboratory in Maywood, testified the total weight of the tablets in six of the bottles was 53.9 grams. She did not weigh the remaining pills due to Illinois statutory weight limits for unlawful possession of hydromorphone, which range from 50 to 200 grams. After performing various tests on 30 randomly selected tablets from the six bottles, Juricic concluded that they contained hydromorphone. Similar to the way Tylenol is a trade name for a substance containing acetaminophen, Dilaudid is a trade name for a substance which contains hydromorphone. Juricic testified hydromorphone is a narcotic drug.

The State rested, and the defendant's motion for a directed verdict was denied. During the instruction conference, defendant objected to People's instruction No. 10, setting forth Illinois Pattern Jury Instruction No. 4.16 defining actual, constructive, and joint possession. (Illinois Pattern Jury Instructions, Criminal, No. 4.16 (2d ed. 1981) (hereafter IPI Criminal 2d).) The court overruled his objection, and it refused defendant's tendered non-IPI instruction No. 1 purporting to define constructive possession as based on case law.

Following arguments of counsel and instructions, the jury found the defendant guilty as charged.

The defendant first contends he was not proved guilty beyond a reasonable doubt because the evidence did not prove that he had possession of the controlled substance. His argument centers on the fact it was the intention of the police not to lose control of the pills, not to let the defendant leave the room with them, and to keep the pills in police custody at all times. Although defendant acknowledges that the police did lose control of one sample pill which he brought out to the van, he points out his conviction was for possession of "more than 50 grams" of the controlled substance. Consequently, he concludes, the State's evidence failed to show his "possession" of the controlled substance as charged.

■■■■ Defendant has cited foreign jurisdiction cases defining the term "possession." This reliance is misplaced since there is ample precedent in Illinois which controls disposition of this issue. In order to support a conviction for the unlawful possession of a controlled substance, the State must prove beyond a reasonable doubt that the defendant had knowledge of the controlled substance and that it was in his immediate and exclusive control. (*People v. Scott* (1987), 152 Ill.

App. 3d 868, 870-71; *People v. Burke* (1985), 136 Ill. App. 3d 593, 599.) Possession may be established by evidence of actual physical possession or constructive possession. (*People v. David* (1986), 141 Ill. App. 3d 243; *People v. Jones* (1982), 105 Ill. App. 3d 1143, 1148.) It is undisputed that the defendant had knowledge of the controlled substance, and, based on the record, the State submits the defendant had actual possession of the pills. We agree.

Actual possession is proved by testimony which shows the defendant exercised an act of physical dominion over the unlawful substance, such as trying to conceal it or throw it away. (*Scott*, 152 Ill. App. 3d at 871; see also *People v. Briggs* (1983), 112 Ill. App. 3d 979.) The defendant here clearly exercised an act of physical dominion over the Dilaudid pills when, after turning the money for the controlled substance over to Agent Pott, he asked for the paper bag back, put the box of pills into the bag and then sat in the chair either (1) holding the bag or (2) holding the bag on the table in front of him or (3) simply with the bag on the table in front of him. Moreover, it has been held that the rule that possession must be "exclusive" does not mean that possession may not be joint (*Burke*, 136 Ill. App. 3d at 599; *David*, 141 Ill. App. 3d 257 (possession may exist jointly with another); *People v. O'Neal* (1985), 139 Ill. App. 3d 791, 795 ("[d]efendant's possession could have been joint *** and still have been considered exclusive").) It is no defense to the charge of possession of drugs that another had knowledge or control of the drugs. (*People v. Birge* (1985), 137 Ill. App. 3d 781.) "If two or more people share immediate and exclusive control or share the intention and power to exercise control, then each has possession." *Scott*, 152 Ill. App. 3d at 871.

Accordingly, defendant's argument that the police did not intend to relinquish custody or control of the Dilaudid pills does not serve to defeat the jury's finding of defendant's possession of same. Knowledge and control are findings of fact, and such findings will not be disturbed on review unless the evidence is so palpably contrary to the verdict, or so unreasonable or unsatisfactory as to create a reasonable doubt of guilt. (*Scott*, 152 Ill. App. 3d at 871; *People v. Strong* (1986), 151 Ill. App. 3d 28, 39.) We find the evidence fully supports the jury's finding and no reversal is warranted.

■ Defendant next contends the court erred when, over his objection, it gave the jury People's instruction No. 10 (IPI Criminal 2d, No. 4.16 (1981)), which provided:

> "Possession may be actual or constructive. A person has actual possession when he has the immediate and exclusive control over a thing. A person has constructive possession when he

lacks actual possession of a thing but he has both the power and the intention to exercise control over a thing either directly or through another person.

If two or more persons share the immediate and exclusive control or share the intention and the power to exercise control over a thing, then each person has possession."

Defendant points to excerpts of an in-chambers conference where the court stated: "It's not constructive possession. He's got possession in his big mitts." Based on such comment, defendant contends the instruction was error because the evidence raised no issue of constructive possession: he did not have the capability to maintain control of the Dilaudid where the area was at all times under the control of the police, not him. That is, the police rented the room to create the setting for his arrest, the police had the key to the room rather than him, he had to knock on the door and be admitted to the room, and he would not have been allowed by the police to leave the room. Defendant argues the instruction confused the jury on the already clouded issue of exactly what was necessary to find him guilty of possession. He cites *People v. Martine* (1984), 121 Ill. App. 3d 793, *aff'd in part & rev'd in part on other grounds* (1985), 106 Ill. 2d 429, and *People v. Turnbeaugh* (1983), 116 Ill. App. 3d 199, in support of his argument that before the issue of constructive possession arises, it must be shown that he had exclusive control of the area or premises where the items illegally possessed were located.

The State argues that not only did the defendant submit his own instruction on the issue of constructive possession, but his cross-examination of each of the agents focused on the agent's control or lack of control of the Dilaudid, thus raising the issue of constructive possession. Having thusly raised the issue, the State asserts the defendant cannot argue now the inappropriateness of the jury being instructed on the issue. (*People v. Marino* (1980), 80 Ill. App. 3d 657, 665-66.) In the event we decide to consider the issue, the State urges we find the court properly gave the instruction in light of defendant's argument at trial that his possession was so restricted as to have virtually nullified his actual possession of the narcotics, and in light of defendant's cross-examination of the agents as to their control or lack of control of the narcotics. In the alternative, the State urges we find any error was harmless.

We do find error but find it was harmless. It has been stated:

"The function of instructions is to convey to the jury the correct principles of law applicable to the evidence so the jury can apply the proper legal principles to the facts and arrive at a

proper conclusion based on the law and the evidence." (*People v. Peebles* (1984), 125 Ill. App. 3d 213, 217.) Very slight evidence regarding a given theory will justify the giving of an instruction on that theory. *People v. Arnold* (1985), 139 Ill. App. 3d 429, 434.

We do not agree that defendant should not be allowed to raise this issue. First, defendant's cross-examination regarding the police control of the Dilaudid could also have been intended to show his lack of *actual* possession. Second, although defendant tendered his own modified constructive possession instruction as an alternative to the State's instruction, it was refused by the court, and, at a subsequent conference on instructions, defendant argued the only issue was his actual possession of the Dilaudid and that there was no constructive possession issue. The court accepted the State's argument, however, that because the evidence showed the defendant was not at all times actually touching the bag containing the pills, there was an issue of constructive possession.

A lack of evidence that the defendant was not physically *touching* the bag of Dilaudid pills, however, would not have rendered insufficient the State's evidence proving his actual possession of same. Actual possession does not require personal present *touching* but, rather, personal present *dominion* over the unlawful substance. (See, *e.g., People v. Scott* (1987), 152 Ill. App. 3d 868, 871.) Thus, for example, in *People v. O'Neal* (1985), 139 Ill. App. 3d 791, where the defendant was arrested in his girlfriend's apartment, his exclusive possession of cannabis was found to have been sufficiently proved by evidence of his sitting at the table upon which the substance lay, "his being the person nearest to the substance," in addition to several other factors. (*O'Neal*, 139 Ill. App. 3d at 795.) In *People v. Briggs* (1983), 112 Ill. App. 3d 979, the defendant's actual possession of cocaine was found to have been proved where a police officer observed the defendant bent over about 10 inches above the sink in a tavern washroom. One other person in the washroom was standing in a corner of the room facing the door. The officer heard scratching noises, and, after asking the defendant what he was doing, the officer saw a plastic card slide into the sink. A white, powdery substance, later determined to contain cocaine, was in lines on the left portion of the sink, and the only fingerprint found on the card proved not to be the defendant's. Based on the facts, the court found the trier of fact could have found that the defendant exercised dominion over the cocaine and, thus, had actual possession. See also *People v. Evans* (1986), 143 Ill. App. 3d 236 (where cocaine was found in an area where defendant had been seen

digging on two occasions, defendant's actual possession of same was proved and there was no issue of constructive possession).

Constructive possession, on the other hand, "exists without actual personal present dominion over the controlled substance but with an intent and capability to maintain control and dominion over it. [Citation.] As a result, narcotics being found on the premises [which are] under the control of defendant gives rise to an inference of knowledge and possession by him which alone may be sufficient to sustain a conviction for unlawful possession of controlled substances. [Citations.]" *(People v. Scott* (1987), 152 Ill. App. 3d 868, 871.) It is clear from the evidence that the defendant did not have control of the motel room and the only issue was defendant's actual possession of the Dilaudid. Therefore, it was error for the court to instruct the jury on constructive possession.

Not all errors in instructions require reversal, however. Where the evidence of a defendant's guilt is so clear and convincing that a jury could not reasonably have found the defendant not guilty, reversal is not warranted. *(People v. Thompson* (1984), 125 Ill. App. 3d 665; *People v. Barnes* (1983), 117 Ill. App. 3d 965.) We find no reasonable probability the jury here could have found the defendant not guilty where the jury first heard testimony concerning the transaction and then viewed a videotape of the actual transaction as it occurred. Accordingly, we conclude no reversal is warranted.

■ The defendant, who is a black male, next contends he was denied his right to be tried by a fair cross-section of the community and his right to equal protection of the law because there were no black persons in the entire venire from which the jury was selected. U.S. Const., amends. VI, XIV.

Although this issue was raised in defendant's post-trial motion, there is nothing in the record which supports his assertion concerning the racial composition of the venire. Defendant did not file a motion to discharge the jury panel as required by section 114—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 114—3), nor did he make an oral motion for same, nor was the *voir dire* of the jury transcribed, nor were jury cards preserved. In such circumstances, the issue has been found not to have been properly preserved for review, particularly where the defendant, as here, does not even suggest what, if any, improper selection procedure was used which resulted in the all-white venire. *People v. White* (1985), 134 Ill. App. 3d 262; *People v. Flowers* (1985), 132 Ill. App. 3d 939; see also *People v. Johnson* (1987), 154 Ill. App. 3d 301; *People v. Perry* (1980), 81 Ill. App. 3d 422.

■■ ■ Defendant's final contention is that the court erred in allowing evidence which implied his involvement in other crimes. Specifically, the defendant complains of the prosecutor's opening comments about a conversation with Agent Pott when he told Pott that he "was only a wholesaler," and about a conversation with Agent Leonard when he told Leonard it was his plan to set up a partnership with Agent Pott to sell the drugs to others as a wholesaler. Defendant made no objection to these comments until after his own opening comments, when he made a motion *in limine* to exclude evidence of anything except the July 10 meeting. The court determined that the State could go into anything that would be relevant to the defendant's intent to commit the offense charged. Later, the trial court overruled the defendant's objection to Agent Pott's testimony that the defendant told him that he "usually sells heroine and cocaine and he would like to sell the pills because it is a much cleaner business." The court also overruled the defendant's objection to Pott's testimony that the defendant told him "he was a wholesaler and would be selling to the other drug dealers." The court's rulings led the defendant to request a mistrial during a sidebar in chambers. The motion was denied. Defendant also raised the issue in his post-trial motion.

Defendant argues generally that proof of other acts is inadmissible in a criminal prosecution (*People v. Long* (1977), 55 Ill. App. 3d 764) and that the substance of one crime cannot be proved by showing the substance of another crime. *People v. Allen* (1937), 368 Ill. 368; *People v. Calhoun* (1977), 46 Ill. App. 3d 691.

We find no abuse of the court's discretion in admitting the evidence in question. Generally, evidence of other crimes is inadmissible to show guilt of the offense charged. (*People v. Cobbins* (1987), 162 Ill. App. 3d 1010, 1016.) Evidence of other crimes is admissible, however, if relevant for any purpose other than to show defendant's propensity to commit crime. (*People v. Bartall* (1983), 98 Ill. 2d 294, 310; *People v. Lee* (1986), 151 Ill. App. 3d 510, 520.) For example, evidence of other crimes is properly admitted to show motive, *modus operandi*, knowledge, identity, absence of mistake, criminal intent, defendant's state of mind, the circumstances of his arrest, or a common design or scheme. (*Lee*, 151 Ill. App. 3d at 520; *People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 484-85.) The purposes for which evidence of other crimes may be admissible are not mutually exclusive; evidence of another crime may fall within several of them. (*People v. Sykes* (1987), 161 Ill. App. 3d 623, 629.) Using evidence of another crime requires some threshold similarity to the offense charged, however (*People v. Brozan* (1987), 163 Ill. App. 3d 73, 79; *Sykes*, 161 Ill. App. 3d at 629),

and the probative value of other crimes evidence must be weighed against its prejudicial effect. (*Brozan,* 163 Ill. App. 3d at 79.) The relevance of such evidence to a material issue and whether its probative value outweighs its prejudicial effect are matters within the sound discretion of the trial court and will not be reversed absent a clear abuse of that discretion. *People v. Jones* (1987), 161 Ill. App. 3d 688, 699.

We agree with the State that the evidence of defendant's other acts was admissible as relevant to his criminal intent to possess and then deliver the controlled substance. It was also relevant as an integral part of the police undercover investigation which led to his arrest. (*People v. Cobbins* (1987), 162 Ill. App. 3d 1010, 1016.) The trial court's effort here in considering the relevancy of the evidence and balancing its probative value versus its prejudicial effect was well done. Accordingly, we find no abuse of its discretion in admitting the evidence.

The judgment of the circuit court of Du Page County is affirmed.

Judgment affirmed.

REINHARD and WOODWARD, JJ., concur.