THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CORY A. SIEFKE, Defendant-Appellant.

Second District   No. 2—88—0624

Opinion filed March 16, 1990.

G. Joseph Weller and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, and Eleesha Pastor O'Neill, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Cory Siefke, was charged by indictment with aggravated kidnapping (Ill. Rev. Stat. 1985, ch. 38, par. 10—2(a)(5)), aggra-

vated unlawful restraint (Ill. Rev. Stat. 1985, ch. 38, par. 10—3.1), and aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(1)). Following a jury trial, defendant was found guilty of kidnapping, aggravated unlawful restraint and aggravated battery. Defendant was sentenced to 10 years' imprisonment for aggravated unlawful restraint and five years' imprisonment for aggravated battery, both to run concurrently. No sentence was imposed on the kidnapping conviction. On appeal, defendant contends that he is entitled to a new trial due to: (1) the State's violation of discovery rules; and (2) an improper closing argument. Defendant also contends that the kidnapping conviction must be vacated. We affirm in part and vacate in part.

The following facts were adduced at trial. The complainant, Ellen Hemmerich, testified that she was jogging on the prairie path in West Chicago, Illinois, around 5 p.m. on July 9, 1987, when she passed by a person later identified as defendant. Hemmerich described defendant as wearing "cutoffs," with a pair of blue pants draped over an arm and carrying a brown quart bottle. Defendant was saying "I love this county; you can do anything and no one will bother you" as Hemmerich passed him. Hemmerich continued jogging for approximately eight minutes, stopped, turned around, and began to jog back toward her house. Upon her return, Hemmerich again encountered defendant on the prairie path. Hemmerich testified that defendant turned around and "whipped up this knife," when she was approximately 10 to 15 feet away from him. Hemmerich stated that she stopped and defendant said "don't scream, and I won't hurt you."

Hemmerich further testified that she was carrying a can of dog repellent during her jog, which she used to try to hold off defendant. Hemmerich sprayed the repellent at defendant, hitting him in the chest. Defendant continued to move toward Hemmerich, and she again sprayed the repellent at defendant, this time hitting him in the face. Defendant was able to grab Hemmerich and a struggle ensued. During the course of the struggle, Hemmerich dropped the can of repellent and was cut on her arm with the knife. Hemmerich stated that she was able to escape and began to run away from defendant. Defendant followed her and eventually caught up with her and pulled her down to the ground. Another struggle ensued, with defendant choking Hemmerich and pulling her toward the bushes. During the struggle, defendant asked Hemmerich, "[W]ould you do this for your daddy?"

Hemmerich stated that defendant finally let her go, and she ran

to the nearest house to call the police and paramedics. Hemmerich further stated that she was able to clean the dirt off her legs and had the cut on her arm treated.

Joseph Gomilar testified that he lived in a house approximately 300 to 400 feet south of the prairie path. At approximately 5:30 p.m. on July 9, 1987, Gomilar was called into his house and found his wife and Hemmerich seated at the kitchen table. Gomilar stated that Hemmerich was in "shock" and he contacted the police.

John Luka testified that he was riding his bicycle on the prairie path around 5:30 p.m. on July 9, 1987, when he saw a woman running toward him. Luka stated that the woman had dirt on her legs and "looked like she fell or something." Luka and the woman exchanged "hi's" and Luka continued riding down the prairie path. Luka stated that he observed a flannel shirt, a quart beer bottle, sunglasses, and a small canister located on the edge of the path approximately 300 feet from where he encountered the woman. Luka did not see a knife anywhere in the area. Luka continued down the path for approximately 200 feet and saw a man weaving back and forth. The man called out for help and said "some broad maced me." Luka stated that he turned around and rode back to look for the woman he had earlier seen. He did not find the woman, turned around again and rode back towards the man again. Luka stated that the man seemed more at ease and was now smoking a cigarette. Luka later identified the woman as Hemmerich and the man as defendant.

Detective William Selby of the Du Page County sheriff's department testified that he arrived at the prairie path on July 9, 1987, at approximately 7 p.m. Detective Selby took photographs of the prairie path and noted the location of a shirt, a beer bottle, and a pair of pants. In addition, Detective Selby was unsuccessful in his search for a knife or a canister of dog repellent and did not recover any sunglasses from the area.

Sergeant William Rizer of the Winfield police department testified that he was called to the emergency room at Central Du Page Hospital at approximately 6:45 p.m. on July 9, 1987, to question a person who "might have been involved in an attack on the prairie path." Sergeant Rizer stated that the person, later identified as defendant, had watery eyes and was being treated for the "mace."

Defendant testified at trial that he did not have to work on July 9, 1987, and went to West Chicago to visit a friend. Defendant stated that he purchased a quart of beer and a pack of cigarettes and began walking down the prairie path. Defendant saw a woman, later identi-

fied as Ellen Hemmerich, jog past him as he continued to walk down the path. Shortly thereafter, defendant heard someone running behind him and turned around to find Hemmerich standing about three feet away from him. Defendant stated that she had a "weird look on her face" and he told her not to scream, that he wouldn't hurt her. Hemmerich then sprayed him in the chest and face with a "yellow liquid," and defendant grabbed her arm. Hemmerich ran away and defendant chased her. He caught up with her and pulled her down to the ground, but released her after she told him that he was hurting her.

Defendant further testified that he went to Central Du Page Hospital and had his eyes treated in the emergency room. He told the nurse to contact the police, and he was later placed under arrest. He denied possessing or using a knife on the day in question and told the police to "find the knife or let me go."

On cross-examination, defendant denied telling the police officers that he kept a folding knife in his pants. However, he did admit that he was in the habit of carrying a knife for use at work, but kept the knife at work and did not take it home.

Robin Rehm, defendant's fiancee, testified that she was engaged to defendant in July 1987 and had lived with him for nearly one year. Rehm stated that defendant bought a knife to use at work but lost it in March 1987. Rehm further stated that defendant did not carry a knife with him thereafter, although she did not know whether he had a knife with him on July 9, 1987.

Deputy Joseph Groh of the Du Page County sheriff's department, called as a rebuttal witness, testified that he had two conversations with defendant on July 9, 1987. During the first conversation, defendant told Deputy Groh that he fell into the woman but did not chase after her. During the second conversation, approximately two hours after the first, defendant stated that he kept a folding knife and $50 in a pocket in his pants, which he was carrying over his shoulder. Deputy Groh stated that defendant, in both conversations, denied using the knife to attack the woman, but instead asserted that the woman sprayed mace at him for no apparent reason.

Following closing arguments, defendant's motion for a mistrial based on an improper closing argument was denied. The jury returned verdicts of guilty on the kidnapping, aggravated unlawful restraint, and aggravated battery charges. The court entered judgment on the verdicts. Defendant filed a timely notice of appeal.

Defendant first contends on appeal that the State violated its discovery obligations by failing to tender to defense counsel an alleged

statement that defendant made to the complainant. Defendant argues that the violation prejudiced his defense and deprived him of a fair trial.

■ Illinois Supreme Court Rule 412 (107 Ill. 2d R. 412) sets forth the scope of the State's obligation to disclose material and information to an accused. With respect to statements of an accused, the rule provides that the State shall disclose to defense counsel

> "any written or recorded statements and the substance of any oral statements made by the accused or by a codefendant, and a list of witnesses to the making and acknowledgment of such statements." (107 Ill. 2d R. 412(a)(ii).)

The purpose of the rule is to protect the defendant from surprise and inadequate preparation at trial by allowing defense counsel to investigate the circumstances surrounding any statements. (*People v. Davis* (1984), 130 Ill. App. 3d 41, 49.) Compliance with the rule is mandatory and requires the State to disclose all statements known to it. *Davis*, 130 Ill. App. 3d at 49; *People v. Winfield* (1983), 113 Ill. App. 3d 818, 836.

In the present case, the prosecutor, in his opening statement, stated: "She [the victim] will even tell you that at one time Siefke [defendant] turned to her and said, would you do this for your daddy?" Defense counsel then objected, noting that the statement "would you do this for your daddy" was never disclosed during pre-trial discovery. The trial court allowed the prosecutor to finish his opening statement, and following defense counsel's opening statement, the court heard arguments on the objection. Defense counsel stated:

> "During the opening statement Mr. Telander told the jury that Ellen Hemmerich would tell them on the witness stand that Cory Siefke made a statement to her to the effect of, would you do this for your daddy, or words in that nature.
>
> Your Honor, I made a motion for discovery—pre-trial discovery a long time ago in this case.
>
> Mr. Telander gave me what he told me were a full set of all police reports and grand jury transcripts.
>
> He indicated on a written answer to discovery that all statements of my client were contained within those reports and transcripts.
>
> * * *
>
> I have always felt that I was entitled to any statements of the defendant, occurrence statements, statements he made—made during the crime or later to law enforcement people.

They are always discoverable.

I never got any such statement in this case, and I feel prejudiced by it."

The prosecutor then responded: "The court has tried many, many cases, and the Court knows that statements made that are part of the crime and within the crime are not the type of statements that the Supreme Court Rule is talking about." The following discussion then occurred:

"THE COURT: First of all, counsel, this is the first time you are apprised of this statement made by the defendant?

MR. LINN [defense counsel]: Yes.

\* \* \*

THE COURT: This was not reduced to a police report?

MR. TELANDER [prosecutor]: Right.

\* \* \*

THE COURT: \*\*\* Is it in writing or anywhere?

MR. TELANDER: It's not in writing.

THE COURT: So at best, I can indicate to you that certainly cannot be disclosed.

\*\*\* [T]here is no obligation at this time to have a discovery of something which is not reduced to writing or in writing.

MR. LINN: Judge, I'm not belaboring it. It just says, the substance of any oral statements.

THE COURT: Yes; oral statement. This would be an oral statement of the complaining witness.

The defendant may have said this to the complaining witness but not to a law enforcer.

MR. LINN: Right.

THE COURT: Okay. The fact that he didn't—the fact that the police officer did not have this in his statement, obviously that's a matter of impeachment or omission but other than that, it's not a lack of discovery.

MR. LINN: Okay.

Just for purposes of the record only, the remedy I'm seeking is a mistrial with prejudice in this case because of that.

THE COURT: Motion made and denied."

■ We agree with defendant's contention that his alleged oral statement to the victim was discoverable under Supreme Court Rule 412. The State has a duty to disclose the substance of all statements made by defendant, even if the statements were not actually reduced to writing. (*People v. DeBord* (1978), 61 Ill. App. 3d 239, 241.) This rule also includes statements which cannot be appropriately charac-

terized as an admission or a confession. (*People v. Ellis* (1982), 107 Ill. App. 3d 603, 615; *People v. Romo* (1980), 85 Ill. App. 3d 886, 896.) Were this not the case, the State would be able to effectively avoid this discovery rule by failing to reduce to writing otherwise discoverable information. *People v. Manley* (1974), 19 Ill. App. 3d 365, 370.

■ Having determined that the State did not comply with Supreme Court Rule 412, we must next determine whether the noncompliance mandates a new trial. The failure to comply with discovery requirements does not, in all instances, necessitate a new trial. (*People v. Harris* (1988), 123 Ill. 2d 113, 151; *People v. Cisewski* (1987), 118 Ill. 2d 163, 172.) A new trial should only be granted if the discovery violation prejudiced the defendant and the trial court failed to eliminate the prejudice. (*Harris*, 123 Ill. 2d at 151-52.) Among the factors to be considered in determining whether the defendant is entitled to a new trial are the closeness of the evidence, the strength of the undisclosed evidence, the likelihood that prior notice could have helped the defense discredit the evidence, and the willfulness of the State in failing to disclose. *Harris*, 123 Ill. 2d at 152; *Cisewski*, 118 Ill. 2d at 172.

Defendant primarily relies on two cases, *People v. Orr* (1986), 149 Ill. App. 3d 348, and *People v. Weaver* (1980), 90 Ill. App. 3d 299, *aff'd* (1982), 92 Ill. 2d 545, to support his contention that he was prejudiced by the State's nondisclosure of the statement. In *Orr*, the defendant was charged with aggravated arson and arson. Five days before the incident, the defendant allegedly told the daughter of the victim of the arson that he "was gonna destroy everything that [she] loved and he was gonna burn [her] mother's house." (*Orr*, 149 Ill. App. 3d at 358.) This statement was never disclosed to defense counsel during pretrial discovery. Defendant's motion for a mistrial based upon the nondisclosure was denied. Defendant was subsequently tried and convicted of the arson charges, and the appellate court reversed. The appellate court determined that the nondisclosed statement constituted a direct threat to commit the crimes for which he was tried and convicted. As such, the court was unable to conclude that the nondisclosure did not prejudice the defendant at trial. (149 Ill. App. 3d at 360.) The court noted that disclosure of the statement would have provided the defendant with the opportunity to interview the daughter and to formulate a method to discredit or explain her testimony. 149 Ill. App. 3d at 360.

Furthermore, in *People v. Weaver* (1980), 90 Ill. App. 3d 299, *aff'd* (1982), 92 Ill. 2d 545, the State failed to disclose to defense

counsel statements that the defendant made to her mother-in-law which allegedly provided a motive to commit the murder of the defendant's husband. The statements were allegedly made a few weeks after the homicide. This court reversed the defendant's conviction, holding that the State's failure to disclose the statements that the defendant made concerning an affair she had had was prejudicial error which denied the defendant a fair trial. (*Weaver*, 90 Ill. App. 3d at 304.) Our supreme court agreed, holding that such nondisclosure required a new trial due to the prejudice involved in the statements. (*Weaver*, 92 Ill. 2d at 561.) The court noted that the testimony was extremely damaging in that it showed a motive to commit the offense charged and a willingness to lie to conceal that motive. 92 Ill. 2d at 560.

We believe that *Orr* and *Weaver* are factually distinguishable from the case at bar. The statement made in the present case was not a direct threat to commit the crimes charged (like in *Orr*) and did not involve an admission concerning the motive for the offense (like in *Weaver*). Instead, the statement was allegedly made during the commission of the offense and was simply one of several statements that defendant made to the complainant. As Ellen Hemmerich testified, defendant said to her during the course of the struggle "don't scream, and I won't hurt you," "I've got this [referring to a knife]," "don't do that [use the dog repellent]," "that didn't do anything," "would you do this for your daddy," and "then go [after the struggle had ended]." The statement was in no way essential to defendant's conviction and, as such, in no way affected the result of the trial. Consequently, the admission of the nondisclosed statement was harmless error which does not warrant reversal in this case. See *People v. Carter* (1988), 174 Ill. App. 3d 369, 377; *People v. Padilla* (1988), 173 Ill. App. 3d 357, 360.

Defendant next contends that he was denied a fair trial by the prosecutor's improper closing argument. Specifically, defendant argues that the prosecutor incorrectly informed the jury that in order to believe defendant, all of the State's witnesses would have to be liars; improperly argued that defense counsel aided defendant in committing perjury; and improperly proffered a personal opinion that defendant was guilty. Defendant argues that the cumulative effect of the errors requires reversal and a new trial.

During his rebuttal closing argument, the prosecutor repeatedly characterized defendant as a "liar" who was trying to "lie his way out" of the crimes charged. In addition, the prosecutor made several comments comparing the testimony of defendant and the victim, stat-

ing "[s]he is either a liar about that or he is guilty. There is [*sic*] no two in betweens." The prosecutor further stated that "[s]he [the victim] is either a liar or he is guilty, and Tom Stuckey and Jeff Groh [police officers] are also liars, or he is guilty." The prosecutor continued by stating that "[i]f you [the jury] find him guilty of anything less than Aggravated Battery, you are giving him a break that he doesn't deserve, and you have called Ellen a liar."

The State responds by arguing that the statements and characterizations made by the prosecutor during his closing argument were permissible argument and hence proper. The State asserts that it was proper to characterize defendant as a "liar" and that there was no misstatement of law with respect to which of the witnesses the jury must believe before finding defendant guilty or not guilty.

   ■ Initially, we note that a prosecutor is allowed a great deal of latitude in giving a closing argument. (*Cisewski*, 118 Ill. 2d at 175; *People v. Sawczenko* (1989), 180 Ill. App. 3d 406, 415.) The trial court's determination of the propriety of the closing argument will generally be followed on appeal absent a clear abuse of discretion. (*Cisewski*, 118 Ill. 2d at 175.) In reviewing allegations of prosecutorial misconduct, we must closely examine the closing arguments of both the State and the defendant in their entirety to place the complained-of comments in their proper context. *Cisewski*, 118 Ill. 2d at 175-76.

Defendant cites *People v. Cole* (1980), 80 Ill. App. 3d 1105, and *People v. Rogers* (1988), 172 Ill. App. 3d 471, to support his position that the prosecutor committed reversible error by telling the jury that in order to believe defendant they must find that the State's witnesses were lying. In *Cole*, the prosecutor stated, in his closing argument:

> "Then you got to ask yourselves if you are going to believe Georgeann Raptis [defense witness] and Alan Cole [the defendant] and the alibi witnesses. Is there one iota of truth in the testimony of the witnesses for the State. You have got to find that Randall Keller is lying. You got to find that Officer Tencza and Slewoski and Officer Cassata are lying. You have got to find that Investigator Gans and the other witnesses of the State are lying." (*Cole*, 80 Ill. App. 3d at 1107.)

The appellate court held that the prosecutor's statements were "such a misstatement of law as to prejudice the defendant and deny him a fair trial." (80 Ill. App. 3d at 1108.) The court noted that the jury could fully believe the testimony of some, if not all, of the State's witnesses and still find the defendant not guilty. 80 Ill. App. 3d at 1108.

Likewise, in *People v. Rogers* (1988), 172 Ill. App. 3d 471, the

prosecutor stated in his closing argument that to believe the defendant's testimony, the jury would have to infer that all of the State's witnesses were lying. This court reversed the defendant's conviction and remanded the case for a new trial based on the prosecutor's improper closing argument. We noted that the defendant's testimony was inconsistent with four of the seven witnesses for the State on one issue and that it was improper for the prosecutor to characterize the testimony of the other witnesses as contradicting the defendant's testimony. *Rogers*, 172 Ill. App. 3d at 478.

We disagree with defendant's claim that *Cole* and *Rogers* support his contention that the prosecutor's closing argument deprived him of a fair trial. In both *Cole* and *Rogers*, the prosecutor incorrectly informed the jury that in order to find the defendant not guilty, they must find that each of the State's witnesses was lying. However, in the case at bar, the prosecutor merely revealed the contradictions between defendant's version, the complainant's recollection, and the investigatory officers' reports concerning the incident in question. The prosecutor argued that the jury would have to believe that the State's witnesses were lying in order to believe defendant's version of the incident. The prosecutor did not state that the jury would have to find that the State's witnesses were "liars" in order to acquit defendant of the offenses charged. Consequently, after reading the prosecutor's closing argument in its entirety, we find that the argument was properly based on the evidence and hence find no prejudicial error.

Defendant also argues that he was prejudiced by the prosecutor's comment during rebuttal closing argument that defendant was "trying to lie his way out of this case, to lie his way. With the help of Mr. Linn [defense counsel]." Defendant contends that this statement was prejudicial when placed in the context of the prosecutor's "perjury theme" closing argument.

Comments which question the integrity of defense counsel and imply that the defense presented was fabricated at defense counsel's direction have consistently been condemned. (*People v. Beringer* (1987), 151 Ill. App. 3d 558, 563-64; *People v. Starks* (1983), 116 Ill. App. 3d 384, 394.) The comment in the present case was immediately objected to, with the trial court sustaining the objection and directing the jury to disregard the comment. This is not an instance of repeated accusations that defense witnesses perjured themselves at counsel's request, but instead was one isolated instance of improper argument. Under these circumstances, any prosecutorial indiscretion shown does not constitute reversible error.

Defendant also argues that the prosecutor improperly interjected

his personal opinion at the end of his rebuttal closing argument. The prosecutor stated:

"I don't usually do this, but there is a psychologist by the name of Samenow I was reading recently, and he has written a book called 'Inside the Criminal Mind,' and he says that the criminals, guys like Cory Siefke, choose their associates, their way of life and the crimes they commit. They reject society long before society rejects them. They are the victimizers, not the victims. They value people only to the extent that they can be manipulated. They believe they are entitled to whatever they desire and they do not justify their actions to anyone.

I read that last night and that suits Mr. Siefke to a tee."

Defense counsel's objection to the remarks was sustained, and the jury was instructed to disregard the remarks.

In *People v. Tiller* (1982), 94 Ill. 2d 303, *cert. denied* (1983), 461 U.S. 944, 77 L. Ed. 2d 1302, 103 S. Ct. 2121, our supreme court addressed the propriety of a similar argument. In *Tiller*, the prosecutor explained to the jury that there was a biological hierarchy to the life forms on earth, ranging from man to amoeba. The prosecutor placed criminals, like the defendant, at the bottom of the hierarchy. The court stated that this argument constituted error because the statements served no purpose other than to inflame the jury's passions. (*Tiller*, 94 Ill. 2d at 320-21.) However, the court determined that the error did not warrant reversal of the judgments because it did not result in substantial prejudice to the defendant. 94 Ill. 2d at 321.

■■ Likewise, in the present case, the prosecutor's comments concerning the book "Inside the Criminal Mind" were improper because they were not based on the evidence and could only have been used to inflame the jury's passions against defendant. However, like in *Tiller*, we do not believe that this error warrants reversal. This was one isolated, improper comment which was cured by the court's prompt instruction to the jury to disregard the statement and thus did not deprive defendant of a fair trial.

Defendant's last contention on appeal is that his conviction of kidnapping must be vacated. Defendant argues that the trial judge, during the sentencing hearing, implicitly entered a judgment notwithstanding the verdict on the kidnapping verdict. We agree.

During the sentencing hearing, the trial court stated that it was not going to sentence defendant on the kidnapping charge because "there has to be intent to secretly confine and just does not match the facts in this case." Later in the hearing, the court stated that secret confinement "is not the situation presented in this case." The fol-

lowing discussion then ensued:

"MR. SPENCE [defense counsel]: Judge, am I to understand the Court then is setting aside the jury verdict on the kidnapping charge?

THE COURT: That's right. In essence, that is what the Court has done."

The court later stated that it was "not going to set aside the kidnapping, it is just no sentence on that charge."

■ In order for defendant to be convicted of kidnapping, the State was required to prove that defendant knowingly and secretly confined another against his or her will. (Ill. Rev. Stat. 1985, ch. 38, par. 10—1(a)(1); *People v. Sykes* (1987), 161 Ill. App. 3d 623, 628.) "Secret confinement" is a necessary element of the offense and must be proved beyond a reasonable doubt. (*Sykes*, 161 Ill. App. 3d at 628.) Secret confinement may be shown by proof of either the secrecy of confinement or the place of confinement. *People v. Mulcahey* (1978), 72 Ill. 2d 282, 285.

In the present case, the trial court determined that the facts did not support the guilty verdict on the kidnapping charge. The court's determination was supported by the *Sykes* decision. In *Sykes*, the appellate court reversed the defendant's conviction of aggravated kidnapping because there was no evidence that the victim was confined or enclosed within any place or any thing. (161 Ill. App. 3d at 628-29.) Since the trial court determined that the "secret confinement" element was not met in our case, no conviction could possibly stand on the kidnapping charge. As such, defendant's kidnapping conviction must be vacated.

For the above stated reasons, the judgment of the circuit court of Du Page County is affirmed, and defendant's conviction of kidnapping, for which no sentence was imposed, is hereby vacated.

Affirmed in part; vacated in part.

UNVERZAGT, P.J., and GEIGER, J., concur.