(No. 72151.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DEDRICK COLEMAN, Appellant.

*Opinion filed February 3, 1994.—Rehearing denied April 4, 1994.*

320

Charles M. Schiedel, Deputy Defender, and John J. Hanlon, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Ter-

ence M. Madsen, Assistant Attorney General, of Chicago, and Renee G. Goldfarb and Linda Woloshin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE NICKELS delivered the opinion of the court:

Defendant, Dedrick Coleman, was charged with the April 26, 1989, shooting deaths of Lance Hale and Avis Welch. The charges against defendant included 10 counts of first degree murder (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), (a)(2), (a)(3)), two counts of armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—2(a)), four counts of home invasion (Ill. Rev. Stat. 1987, ch. 38, pars. 12—11 (a)(1), (a)(2)), two counts of armed violence (Ill. Rev. Stat. 1987, ch. 38, pars. 33A—2, 9—1(a)(2)), and two counts of residential burglary (Ill. Rev. Stat. 1987, ch. 38, par. 19—3). After a jury trial in the circuit court of Cook County, defendant was convicted of two counts each of first degree murder, armed robbery, and home invasion. Defendant waived the right to be sentenced by the jury and the trial court found him eligible for the death penalty and sentenced him to death. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(h).) Defendant was also sentenced to concurrent terms of 30 years for the home invasions, and to concurrent terms for the armed robberies: 30 years for the armed robbery of Hale, and 60 years for the armed robbery of Welch. The sentences for armed robbery were to be served consecutive to the terms for home invasion. Defendant's death sentences were stayed pending direct appeal to this court. Ill. Const. 1970, art. VI, § 4(b); 134 Ill. 2d Rules 603, 609(a).

## BACKGROUND

Testimony at trial revealed the following. About a month before the April 26, 1989, slayings, defendant and Alex McCullough had an argument concerning drugs. McCullough ran an illegal drug business in

Chicago and employed defendant in the trade. McCullough was also the boyfriend of defendant's sister, Fredricka. The cause of the argument was defendant's alleged theft of seven ounces of cocaine and $2,000 from McCullough.

On the evening of April 25, 1989, defendant went to the house of Victor Truell, his cousin, and told Truell that he was going to "scope out" McCullough's drug house at 43rd and Princeton in Chicago in order to "[s]tick it up." Defendant also told Truell that he and McCullough had been threatening each other. Defendant was wearing a Bulls jacket, black pants, gym shoes, and black gloves that evening. Defendant also had a gun, which Truell identified as People's exhibit number one.

Around 5:30 a.m. or 5:45 a.m. on April 26, 1989; Aldene Lockett, who lived above the drug house at 43rd and Princeton, heard voices coming from the drug house. Shortly thereafter, Lockett heard a shot and something fall. Lockett later heard two more shots and then a door open. At this time, Lockett looked out her window and saw a young man around 5 feet 6 inches to 5 feet 8 inches tall dressed in black and wearing sunglasses.

Later that morning, defendant visited Truell and asked him if he had heard about the two people killed at 43rd and Princeton. Truell had not heard about the murders and defendant told him that he had killed the two. Defendant described what happened. Defendant went up to the window of the drug house and asked for $8 worth of cocaine. When the man behind the window turned his back, defendant shot him through the window. This man, defendant told Truell, was "Greg's brother." Hale was in fact the brother of Gregory Taylor. Defendant then climbed into the drug house through the window and went to the front room where

he found the female victim. This woman begged for her life but defendant ordered her to get down on the floor. Defendant then shot her in the head. Defendant took $400 from the male victim, as well as three rings and a gold chain from the drug house. Defendant showed these items to Truell.

Defendant later told Francisco Rico Balberas (Rico) about the murders. Defendant told Rico that he had shot a "boy" and a "girl" in the head on April 26, 1989, on the south side of the city. Rico did not believe defendant, but defendant insisted that he was telling the truth.

On May 1, 1989, defendant, his girlfriend Dorothy, Rico, and Truell went to defendant's sisters' apartment. At this time, defendant showed Rico a gun, which Rico identified as People's exhibit number one. Once inside the apartment, defendant warned his sister, Laurarence Coleman, that she and another sister, Sophia, should stay away from McCullough because a "hit" was placed on him. Defendant denied placing the "hit" on McCullough. Laurarence saw defendant's gun and briefly took it away from him. Laurarence identified the gun as People's exhibit number one. Defendant also asked Laurarence questions about McCullough, such as when he left his home, whether he carried a gun, and how much money he usually carried.

As defendant, Dorothy, Rico, and Truell began to leave the apartment, McCullough was just outside the door. Truell tried to close the door, but McCullough pushed his way into the apartment. McCullough did not have his gun drawn at this time. Defendant began to shoot at McCullough and, as McCullough drew his gun, defendant grabbed Sophia by the neck and used her as a shield. Defendant then shot McCullough and left the apartment through the back. McCullough later died from the gunshot.

Later that day, defendant went to Truell's apartment around 4 or 5 p.m. with a bottle of champagne. Defendant told Truell that he wanted it said that he shot McCullough in self-defense. The two later turned themselves in to the police.

Truell told the police about McCullough's murder and further informed them about defendant's participation in the murders of Hale and Welch. Defendant was arrested for the murder of McCullough. Several months later, defendant was charged with Hale's and Welch's murders.

On May 2, 1989, Lockett viewed a lineup which included defendant. Lockett identified defendant as similar in height and description to the man she had seen leaving the drug house. Lockett asked the police to make the men wear sunglasses, which all the participants did, except defendant, who refused. Lockett could not positively identify defendant as the man she saw leaving the drug house.

On May 5, 1989, defendant called Rico from the county jail. Defendant told Rico to get rid of the gun he used to kill McCullough by throwing it down a sewer. Defendant also wanted Rico to take the gun apart and jam something down the barrel. Defendant told Rico where to find the gun. Rico found the gun and gave it to his cousin "Bubba."

Rico spoke to the police on May 7, 1989, and retrieved defendant's gun for them. This gun became People's exhibit number one. According to the Chicago police department's firearms technician, this gun fired the bullet that killed McCullough. Moreover, the bullet that killed Hale had the same class characteristics as the bullet that killed McCullough: six lands and grooves to the left, the same widths on the lands and grooves, and the same manufacturer. Damage sustained by the bullet as it entered Hale's head, however, precluded a

positive determination that it had been fired from the same weapon that killed McCullough.

In May 1989, defendant called Roscita Balberas, Rico's sister, from the Cook County jail. Defendant told Roscita about the McCullough murder and also described the shooting at the drug house. Defendant told Roscita that he had shot a man in the head and had made a woman get down on the ground before shooting her. The woman begged for her life, saying: "You can rape me or do anything you want to do. Please don't kill me." Defendant told the woman to "shut up, Bitch" and shot her in the head. Defendant also told Roscita to tell Rico and another man to have defendant's brother kill Truell so that he could not testify about McCullough's murder.

While defendant was incarcerated at the Cook County jail, he shared a cell with Herbert Arch. Defendant told Arch that he was in jail for killing McCullough. Defendant also told Arch that he had previously served time in jail for stealing meat trucks while working for McCullough. According to defendant, McCullough had owed him money for going to prison for him, but had never paid defendant. Because of this, defendant told Arch, he had planned to kill McCullough once he got out of prison. Once out of prison for the theft, defendant began selling drugs for McCullough and took seven ounces of cocaine and some money from him. Defendant also told Arch that the gun he used to shoot McCullough had "2 or 3 murders in it," and that it was the same gun he used to kill the two at McCullough's drug house.

Additional facts will be presented where required for a thorough discussion of the issues.

## ISSUES

Defendant raises 14 issues in his appeal, the first six of which concern trial error. Defendant argues: (1) he was denied a fair trial where the trial court allowed

admission of evidence of other crimes to show his propensity to commit crime; (2) he was denied a fair trial when the prosecutor elicited testimony regarding prior aliases used by defendant and such information was immaterial to any issue in this case; (3) he was denied a fair trial where the prosecutor, during cross-examination of defendant, reminded him that there had been no plea agreement offer made; (4) he was denied a fair trial where the character of one of his key witnesses was improperly attacked during cross-examination with extrinsic evidence; (5) he was denied a fair trial where the prosecution used its "life and death" witnesses to testify about inadmissible victim impact evidence; and (6) he was denied a fair trial where the prosecutor made improper closing arguments to the jury.

Defendant's next two issues concern trial counsel's performance. Defendant argues here that: (7) he was denied effective assistance of counsel due to various errors during trial and sentencing; and (8) new counsel should have been appointed to represent him regarding various *pro se*, post-trial claims which challenged trial counsel's effectiveness.

Defendant also raises four issues concerning sentencing. Defendant argues: (9) resentencing should be ordered where the trial judge found him eligible for the death penalty under two separate statutory aggravating factors, but where the prosecution had sought a finding of death eligibility under only one of the aggravating factors; (10) he was denied a fair capital sentencing hearing when the prosecution introduced testimony, exhibits, and argument regarding defendant's alleged gang membership; (11) he was denied a fair capital sentencing hearing when the judge found that he could not be "rehabilitated or restored to useful citizenship"; and (12) defendant's waiver of his right to a jury for capital sentencing was constitutionally invalid under

the eighth and fourteenth amendments where he was unaware that a contrary vote by even a single juror would preclude a death sentence.

Finally, defendant raises two arguments concerning the constitutionality of the Illinois death penalty statute. Defendant argues that the statute: (13) places a burden of proof on the defendant which precludes meaningful consideration of mitigation; and (14) does not sufficiently minimize the risk of arbitrarily or capriciously imposed death sentences.

We affirm defendant's convictions and death sentence.

### ALLEGED ERRORS AT TRIAL

#### I

Defendant first argues that he did not receive a fair trial because the State was allowed to introduce evidence of other crimes in which defendant participated. Specifically, defendant argues the following: (1) evidence of McCullough's shooting was inadmissible; (2) the amount of detail of McCullough's shooting severely prejudiced defendant; (3) defendant's involvement in a 1984 theft was inadmissible; and (4) defendant was substantially prejudiced by the evidence of other crimes.

Prior to trial, the State filed a motion to allow proof of other crimes. These crimes were defendant's conviction for a January 12, 1987, theft of semi-trailers containing frozen meat, and defendant's participation on May 1, 1989, in McCullough's death. The State argued the evidence was admissible for the following reasons: (1) the evidence provided defendant's motive for killing Hale and Welch; (2) the investigation of McCullough's murder led the police to witnesses Truell and Rico; and (3) the evidence linked defendant to People's exhibit number one, the gun matching the characteristics of the gun that killed Hale. The trial

court allowed the evidence to be admitted, finding a "continuum" of facts linking the two crimes with the murders of Hale and Welch.

Evidence of other crimes in which a defendant may have participated is not admissible to show the defendant's propensity to commit crime. Such evidence, however, is admissible if relevant for any other purpose such as *modus operandi*, proof of motive, intent, identification, or absence of mistake. (*People v. Richardson* (1988), 123 Ill. 2d 322, 339.) In fact, evidence of other crimes is admissible if relevant for any purpose other than to show propensity to commit crime. *People v. Evans* (1988), 125 Ill. 2d 50, 82.

### a. Evidence of McCullough's Shooting

Defendant first argues the evidence of his participation in McCullough's death was inadmissible. The State responds that defendant has waived this issue for review by failing to object at the trial level. The State notes that after it filed its motion to allow other-crimes evidence, defense counsel objected only to the introduction of the 1987 meat theft. Then, after the trial court granted the State's motion as to both crimes, defense counsel stated:

> "Judge, I can understand \*\*\* the one alleged murder [McCullough's], but the thefts also, your ruling applies there too?"

Issues not objected to at the trial level are waived for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) However, the waiver rule is not without exception. Supreme Court Rule 615(a) provides that this court may review an issue not properly preserved for review as plain error where (1) the evidence is closely balanced, or (2) the error is of such magnitude that the defendant was denied a fair trial. 134 Ill. 2d R. 615(a); *People v. Ward* (1992), 154 Ill. 2d 272, 294.

Contrary to defendant's assertions, the evidence here

is not closely balanced. Just prior to the crime, defendant told Truell that he was going to "hit" McCullough's drug house on 43rd and Princeton. Defendant later confessed his killing of Hale and Welch to four persons, each of whom testified at trial. Moreover, People's exhibit number one, the gun that killed McCullough, matched the characteristics of the gun that killed Hale. Defendant admitted killing McCullough, and Truell testified that defendant had People's exhibit number one with him the night of the murders. Also, though not a positive identification, defendant was identified as being of the same height, complexion, and physical build as the person seen coming out of the drug house after shots were heard. Finally, defendant had the motive to kill Hale and Welch, McCullough's employees, to seek revenge on McCullough. The evidence against defendant was overwhelming.

We feel compelled, however, to address defendant's arguments because the evidence, if improperly admitted, could have denied defendant of a fair trial. See *People v. Smith* (1992), 152 Ill. 2d 229, 255-56.

We first note that the evidence concerning defendant's participation in McCullough's death was relevant to defendant's motive to kill Hale and Welch. Such evidence tends to show that defendant still harbored feelings of revenge against McCullough after being released from prison on the 1987 meat theft conviction. This information was important because defendant testified at trial that he did not bear any ill will towards McCullough or plan to seek revenge after being released from prison. The fact that defendant did go after McCullough and succeeded in killing him refuted defendant's trial testimony, and further supported Arch's testimony that defendant did plan to seek revenge on McCullough. Defendant's bitter feelings towards McCullough thus make it more likely that defendant would have robbed

McCullough's place of business and killed two of his employees in the process.

Defendant also argues that evidence of his participation in McCullough's death was inadmissible because it was subsequent to the deaths of Hale and Welch. This court has previously noted, however, that "when 'the question is whether the defendant's conduct evidenced a peculiar plan to commit a particular offense, *** we see no reason to exclude conduct occurring subsequently.' " *People v. Bartall* (1983), 98 Ill. 2d 294, 312, quoting *People v. Lehman* (1955), 5 Ill. 2d 337, 343.

Defendant's participation in McCullough's death was also relevant and admissible to link defendant to People's exhibit number one, the gun which was of a type that killed Hale. Other-crimes evidence is admissible to show that a defendant had access to guns similar to the one used in the charged crime. (*People v. Adams* (1985), 109 Ill. 2d 102, 122.) Moreover, this court has held that evidence of a later shooting is relevant and admissible to prove the defendant committed an earlier shooting. (*People v. Richardson* (1988), 123 Ill. 2d 322.) This court stated in *Richardson*:

> "The evidence of the April 5, 1980, shooting clearly tended to identify defendant as the perpetrator of the April 1, 1980, murder, in light of the evidentiary links between the two crimes. Expert testimony at trial established that the same gun fired the bullet which killed [the first victim] and the bullet which wounded [the second victim]." (*Richardson*, 123 Ill. 2d at 339.)

The same rationale applies here. The evidence of defendant's shooting and killing McCullough links him to the gun that likely killed Hale. Defendant admitted killing McCullough, but denied using People's exhibit number one to do so. However, expert testimony revealed that the bullet that killed McCullough was fired from People's exhibit number one.

We finally note that evidence of McCullough's killing

was relevant and admissible to show the circumstances of defendant's arrest. Evidence of other crimes may be admissible to show the context of defendant's arrest. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 183.) Evidence of defendant's arrest for killing McCullough was relevant to show how the police became aware of Truell and Rico, who were both with defendant when the shooting occurred. The existence of Truell and Rico is important because defendant confessed to both of them about the murders of Hale and Welch. Moreover, Rico led the police to defendant's gun, People's exhibit number one.

While defendant argues that all this information, motive, defendant's link to the gun, and evidence concerning how the gun and witnesses were located, could have been admitted without mentioning McCullough's killing, we note that defense counsel did not ask the court to limit the State's introduction of evidence at trial. Any such argument has been waived for review. (*Enoch*, 122 Ill. 2d at 186.) We further find no plain error here. Any such information, without evidence of McCullough's shooting, would have kept critical evidence from the jury, such as the positive identification of the firearms expert which linked defendant to the gun, People's exhibit number one, that killed McCullough.

b. Detail of the Evidence of McCullough's Death

Defendant next argues that even if evidence of McCullough's killing was admissible, the amount of evidence allowed was highly prejudicial. We first note that defendant has waived this issue for review because defense counsel never objected to any of the evidence of McCullough's killing. (*Enoch*, 122 Ill. 2d at 186.) We further conclude that the admission of such evidence was not plain error. Most of the evidence of which defendant now complains was relevant and admissible to show de-

fendant intended to kill McCullough and did not act in self-defense. Such evidence supports the State's theory that defendant killed Hale and Welch as part of his plan to seek revenge on McCullough.

The only evidence of which defendant complains that bears mention here is the testimony that he used his sister Sophia as a shield. We do not find the admission of this evidence to rise to the level of plain error.

### c. Evidence of a 1984 Meat Theft

Defendant next argues that the jury was improperly allowed to hear details of another meat theft in which he was involved in 1984 and for which he was convicted in 1985. The general rule is that it is improper to cross-examine a defendant about a prior conviction even where the conviction has been properly introduced into evidence. (See *People v. Madison* (1974), 56 Ill. 2d 476, 488.) However, this rule does not apply where the defendant opens the door to such cross-examination. (See *People v. Nastasio* (1963), 30 Ill. 2d 51, 58.) We find that defendant opened the door to such cross-examination.

Defendant testified on direct examination that he had been convicted of a crime, possibly theft, for which he had received probation. Defendant also informed the jury that he had been convicted of attempted residential burglary and theft and had received concurrent sentences of three years. Defendant finally told the jury about his 1987 conviction for stealing frozen meat. After admitting these crimes, defendant stated in response to defense counsel's question of whether he murdered Hale and Welch:

> "No, I didn't. If I would have committed the double homicide I wouldn't be here on trial for it today. I would immediately pleaded guilty just as I did any other crime I committed."

The thrust of defendant's testimony was that he pleaded guilty to the earlier offenses because of his desire to tell

the truth. Thus, defendant implied that he was telling the truth here as well.

On cross-examination, the prosecution elicited the following details of defendant's 1985 conviction for stealing frozen meat. Defendant was stopped on September 27, 1984, while driving McCullough's car, and the police found a number of boxes of stolen meat in the car.

Defendant opened the door to the State's inquiry into his guilty plea in the 1984 meat theft by testifying that his plea was the result of his desire to tell the truth. The State, by eliciting the details of the theft, sought to contradict defendant's testimony by showing that defendant pleaded guilty not due to any desire to tell the truth, but because he was caught with the meat in his possession and that the evidence against him was overwhelming. We find no error in the State's cross-examination.

### d. Cumulative Error

Defendant finally argues that all of this evidence, even if not prejudicial standing alone, is prejudicial in its cumulative effect. We disagree, as we have found nearly all of the evidence of which defendant complains properly admissible and the rest not rising to the level of plain error.

### II

Defendant next argues that he was denied a fair trial because the prosecution elicited testimony regarding prior aliases used by defendant. On cross-examination concerning the 1984 meat theft, the prosecution asked defendant if he had told the arresting officer that his name was Anthony Truell and whether he later told the police his name was Michael Bell. Defendant denied giving these aliases, and the State called the arresting officer in that 1984 theft to testify that de-

fendant had indeed given these aliases. Defendant argues that the officer's testimony was immaterial to any issue in this case.

Evidence of the use of an alias is admissible only if material to some issue in the case. (See *People v. Pumphrey* (1977), 51 Ill. App. 3d 94, 99, citing *People v. Singer* (1919), 288 Ill. 113.) However, as the State notes, no objection was made at trial to the evidence of defendant's use of aliases and the issue was not included in defendant's post-trial motion. Thus, the issue has been waived for review. (*Enoch*, 122 Ill. 2d at 186.) While defendant argues that the plain error doctrine should be invoked because the evidence was closely balanced, as previously noted, we disagree. Nor do we find that the admission of this evidence denied defendant a fair trial. The evidence was material to show that, when defendant was arrested for the 1984 meat theft, he knew that the evidence against him was overwhelming. Such evidence would refute defendant's claim that he pleaded guilty because of his desire to tell the truth. The use of a false name after the commission of a crime is commonly accepted as relevant on the issue of consciousness of guilt. See *People v. Maldonado* (1971), 3 Ill. App. 3d 216, 223; see also *United States v. Boyle* (1st Cir. 1982), 675 F.2d 430, 432; *United States v. Levy* (3d Cir. 1989), 865 F.2d 551, 558; *United States v. Kalish* (5th Cir. 1982), 690 F.2d 1144, 1155.

### III

Defendant's third issue on appeal is that he was denied a fair trial when the prosecutor twice reminded him on cross- examination that there had been no plea offer in this case. On cross-examination, the prosecutor asked defendant whether he had pleaded guilty to previous crimes because he knew in advance the sentence he would receive. Defendant replied that there had been a plea agreement in only one of the prior crimes. The prosecutor then inquired:

"Q. [Prosecutor]: Well there is no [plea] agreement in this case is there?

A. [Defendant]: Pardon me?

[Objection sustained]

Q. There had [*sic*] no offer has there, Mr. Coleman?

[Objection sustained.]"

Defendant argues that the prosecutor's questioning violated Supreme Court Rule 402(f), which provides:

"If a plea discussion does not result in a plea of guilty, or if a plea of guilty is not accepted or is withdrawn, or if judgment on a plea of guilty is reversed on direct or collateral review, neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal proceeding." (134 Ill. 2d R. 402(f).)

Defendant notes that while Rule 402(f) and cases interpreting it are concerned facially with prohibiting the use of statements affirmatively made during plea negotiations, the same concern should attach to evidence of the lack of any plea negotiation. For here, defendant argues, the prosecutor's message to the jury was clear: the prosecution viewed this case in such a serious light that it had not tendered any plea offers to defendant.

Defendant further argues that a violation of Rule 402(f) requires reversal even in the face of overwhelming evidence of defendant's guilt. *People v. Hill* (1980), 78 Ill. 2d 465, 474.

Defendant also argues that the prosecutor's questioning violated the rule of law that a prosecutor may not express his personal beliefs or invoke the integrity of his office to attack the credibility of a witness. The prosecutor's questions, defendant argues, created a substantial likelihood that the jurors, "relying on the integrity of the prosecutor, [would] defer to his or her judgment concerning the guilt of the accused or the credibility of a witness." *People v. Wilson* (1990), 199 Ill. App. 3d 792, 796.

Defendant has waived this issue for review for failing to include it in a post-trial motion. (*Enoch*, 122 Ill. 2d at 186.) Nor do we find this issue subject to the plain error rule. The evidence against defendant is overwhelming. Also, the prosecutor's questioning of defendant did not amount to a denial of a fair trial. While defendant argues that a violation of Rule 402(f) requires reversal even in the face of overwhelming evidence, there was no violation of the rule here.

Rule 402(f) is concerned with comments made by a defendant during plea discussions. No plea discussions were held in this case. Thus, defendant made no comments during a plea discussion. This court stated in *People v. Friedman* (1980), 79 Ill. 2d 341:

"Implicit in the promulgation of this rule was our recognition of the significance of the negotiation process to the administration of justice [citation] and our appreciation of the devastating effect of the introduction of plea-related statements in the trial of the accused [citation]." *Friedman*, 79 Ill. 2d at 351.

We further note that objections were made to both questions and were sustained, and that defendant did not answer the questions. The trial court also instructed the jurors that they were to disregard questions to which objections were sustained. Thus, any possible error was cured. As noted by this court in *People v. Jones* (1992), 153 Ill. 2d 155, 161:

"The trial judge properly instructed the jury to disregard questions to which objections were sustained. This instruction cured any potential error that might have arisen, and reduced the transactions to what will happen in any trial: sustained objections to improper questions. If this were grounds for a new trial, no verdict could ever stand."

## IV

Defendant next argues that he was denied a fair trial when the prosecution improperly attacked the

character of one of his key witnesses. The defense called Emanuel Vasquez to the stand to discredit Arch's testimony regarding defendant's confession to Arch in prison. Vasquez testified that Arch had previously testified falsely against him under similar circumstances in Vasquez's murder trial. Defendant argues that Vasquez was a key witness because if the jury believed his story, that Arch had previously lied under similar circumstances, the jury would more likely believe that Arch had lied in defendant's trial.

Defendant alleges that the State improperly attacked Vasquez's character in several ways. First, defendant argues that the State had Arch testify on direct examination that Vasquez asked Arch to lie to the police on Vasquez's behalf regarding Vasquez's case. However, the record does not reveal that which defendant complains of here. Arch never testified on direct examination that Vasquez asked him to lie. Moreover, even if Arch had testified as defendant claims, defendant has waived the issue for review in that the issue was not raised in a post-trial motion. *Enoch*, 122 Ill. 2d at 186.

Defendant next complains that the State improperly questioned Vasquez "in-depth" about his attempt to secure favorable but false testimony from Arch. This contention has also been waived and is without merit. No objection was made to the testimony to which defendant now objects and the issue was not raised in a post-trial motion. (*Enoch*, 122 Ill. 2d at 186.) Moreover, none of the testimony defendant cites involves any solicitation to secure false testimony. Even if it had, defendant opened the door to the State's cross-examination by calling Vasquez to the stand to attack Arch's credibility. See *People v. Kokoraleis* (1989), 132 Ill. 2d 235, 262.

Defendant next argues that the prosecution improperly questioned Vasquez regarding his involvement in a

Spanish street gang and asked him other gang-related questions. The testimony to which defendant objects is of two types: (1) testimony related to Vasquez's gang affiliation; and (2) testimony concerning Arch's gang affiliation. Defendant argues that gang evidence is so prejudicial that it is inadmissible except in certain limited circumstances. See *People v. Smith* (1990), 141 Ill. 2d 40, 58 (concerning evidence that the *defendant* was a gang member).

Defendant has waived this issue for review as it was not included in a post-trial motion. (*Enoch,* 122 Ill. 2d at 186.) Moreover, defense counsel objected to the evidence concerning Vasquez's gang affiliation and the objection was sustained by the trial court which then instructed the jury to disregard the testimony. The trial court also instructed the jury at the end of trial to disregard questions to which objections were sustained. Thus, any error which may have occurred was cured by the trial court's instructions.

Concerning the questions regarding Arch's involvement in gang activity, defendant does not explain how this evidence would prejudice him. Any such evidence would have prejudiced Arch, and thus would have been helpful to defendant.

Defendant finally argues here that the State was improperly allowed over objection to cross-examine Vasquez about the details of his murder conviction, including: (1) the name of the victim; (2) the manner of the victim's death; (3) the number of witnesses against Vasquez; and (4) the nature of those witnesses' testimony. Defendant argues that these inquiries violated the rule which prohibits inquiry into particular facts surrounding a prior conviction. *People v. DeHoyos* (1976), 64 Ill. 2d 128, 132.

However, as the State notes, defendant has waived this issue for review by failing to object, or to object for

the reasons argued on appeal, to the State's questioning of Vasquez and by failing to include the issue in a post-trial motion. (*Enoch*, 122 Ill. 2d at 186.) We further do not find this issue subject to review under the plain error doctrine. While the *DeHoyos* court reversed and remanded for a new trial where the State elicited details from a witness concerning his *unrelated* prior conviction, the same is not true here. Vasquez's conviction became related once defense counsel placed him on the stand and questioned him about Arch's testimony in Vasquez's trial in an attempt to discredit Arch's testimony in the instant trial. Once again, defendant cannot now complain where defense counsel has opened the door to the State's questioning.

## V

Defendant's fifth contention on appeal is that he was denied a fair trial where the prosecution used its life and death witnesses to testify about inadmissible victim impact evidence. Defendant contends that the State purposely elicited from several witnesses inadmissible and prejudicial victim impact evidence.

The State called Mary Williams, Welch's mother, to testify as a life and death witness. Williams testified that she had three children, two of whom survived Welch. These two children, as well as Welch's daughter, lived with Williams. The State also called Shirley Moore, Hale's girlfriend, to testify as a life and death witness. Moore testified that she told Hale's brother and sisters that Hale was dead.

There was no objection to this testimony and the issue was not raised in any post-trial motion. Thus, the issue has been waived for review. (*People v. Smith* (1992), 152 Ill. 2d 229, 263.) Defendant, however, argues that this issue has not been waived because the trial court is under a duty to refuse such irrelevant and prejudicial evidence on its own motion. (*People v. Hope* (1986), 116

Ill. 2d 265, 275.) We disagree and note that the evidence here does not rise to the level of plain error, as it was elicited incidentally and was harmless. See *People v. Del Vecchio* (1989), 129 Ill. 2d 265, 287-88.

## VI

Defendant next argues that he was denied a fair trial because of improper closing remarks made by the prosecution. Defendant first complains of the following remarks:

"[Prosecutor]: Ladies and gentlemen, in order to believe the Defendant you must believe that all the civilian witnesses, all the police, all the experts, lied. And of all the 4 or 5 million people in this city.

[Defense counsel]: Objection.

THE COURT: Overruled.

[Prosecutor]: They got together to frame him. On two unrelated crimes in different areas of the city. It's not to be believed, ladies and gentlemen."

Defendant argues that these remarks were improper for several reasons. First, defendant argues that the prosecutor misstated the law when he told the jury that in order to believe defendant it must find that each prosecution witness was lying. Defendant relies on several appellate decisions for this proposition. (*People v. Wilson* (1990), 199 Ill. App. 3d 792; *People v. Rogers* (1988), 172 Ill. App. 3d 471; *People v. Crossno* (1981), 93 Ill. App. 3d 808.) Defendant argues that the prosecutor's argument here was unacceptable for it grossly misstated the State's burden of proof, that of proving defendant guilty beyond a reasonable doubt as to every essential element of the crime.

We first note that defendant did not include this issue in a post-trial motion and has thus waived the issue for review. (*Enoch*, 122 Ill. 2d at 186.) However, because the prosecutor's remarks, as defendant characterizes them, could have the effect of denying defendant a fair trial, we review the issue under the plain error rule. See *Smith*, 152 Ill. 2d at 255-56.

The prosecutor's closing remarks were not improper misstatements of law. The appellate decisions defendant cites relied on *United States v. Vargas* (7th Cir. 1978), 583 F.2d 380, where the Federal court held:

"It is well established that a prosecutor's misstatements of law in closing argument can be grounds for reversal. [Citations.] Included within this restriction are statements that in effect distort the burden of proof by suggesting incorrectly what the jury must find in order to reach a certain verdict. [Citation.]" *Vargas*, 583 F.2d at 386.

In *Vargas*, as well as *Crossno* and *Rogers*, the prosecutor informed the jury that in order to reach a verdict of not guilty, it would have to find that the prosecution's witnesses were lying. The same is not true here. The prosecutor at defendant's trial informed the jurors that in order to believe defendant they would have to find that all the State's witnesses had lied. Thus, the jury could disbelieve defendant but still conclude that the State had not met its burden of proof. This distinction was recognized in *People v. Siefke* (1990), 195 Ill. App. 3d 135, where the court noted:

"The prosecutor argued that the jury would have to believe that the State's witnesses were lying in order to believe defendant's version of the incident. The prosecutor did not state that the jury would have to find that the State's witnesses were 'liars' in order to *acquit* defendant of the offenses charged." (Emphasis added.) *Siefke*, 195 Ill. App. 3d at 145.

In defendant's other case, *Wilson*, the prosecutor asked the jurors whether they were curious that the defendant would have them believe that everyone was guilty of something except defendant. The *Wilson* court found this statement, although differing from the statements in *Crossno* and *Rogers*, to be just as prejudicial, for it informed the jury that the defendant had a burden of proof to establish his innocence. (*Wilson*, 199 Ill. App. 3d at 797.) Once again, the same is not true here. The State's comment did not inform the jury that

defendant had a burden of proof. Instead, the comment was a direct response to defense counsel's closing argument that many of the State's key witnesses had lied. Defense counsel had argued to the jury that Laurarence, Truell, Rico, Arch, Rosie, and a police officer had lied.

While the State's assertion that defendant's testimony contradicted *all* the State's witnesses was not correct, the statement was an improper comment on the evidence rather than a misstatement of law. This court has previously stated:

"Every defendant has the right to a trial free from improper prejudicial comments or arguments by the prosecutor. Whether a prosecutor's comments or arguments constitute prejudicial error is evaluated according to the language used, its relation to the evidence, and the effect of the argument on the defendant's right to a fair and impartial trial. [Citation.]

On the other hand, the prosecutor is allowed a great deal of latitude in making his opening statement and closing argument. \*\*\* Although the prosecutor's remarks may sometimes exceed the bounds of proper comment, the verdict must not be disturbed unless it can be said that the remarks resulted in substantial prejudice to the accused, such that absent those remarks the verdict would have been different. [Citations.]" *People v. Pasch* (1992), 152 Ill. 2d 133, 184-85.

We do not find that the prosecutor's remarks here resulted in any substantial prejudice to defendant such that absent the remark the result of the trial would have been different.

Defendant next argues that the prosecutor committed reversible error in arguing, "And *all of* the 4 or 5 million people in this city. \*\*\* They got together to frame [defendant]." (Emphasis added.) Defendant argues that his testimony did not imply that every resident of Chicago was a liar. Defendant misquotes the prosecutor's statement to the jury. The prosecutor actually stated,

"And *of all* the 4 or 5 million people in this city." The prosecutor's statement does not convey the message defendant ascribes to it. The obvious message the prosecutor conveyed to the jury was the implausibility that "of all" the people in Chicago, the State's witnesses got together to frame defendant. Defendant, in his reply brief, acknowledges the misquote but does not acknowledge the obvious meaning of the comment. Instead, defendant edits the statement to read: "all the four or five million people in this city ... got together to frame him." This creative attempt to change the obvious meaning of the prosecutor's statement requires no further discussion by this court.

Defendant also argues that the prosecution erred when it referred to defendant as the "devil." During closing arguments, the prosecutor commented on the "quality" of the State's witnesses:

"He chose those witnesses when he bragged to them. It was his decision to make them witnesses ladies and gentlemen. And sure they've seen themselves in the past. But when you go after the devil ladies and gentlemen, sometimes you have to go to hell for the witnesses."

Defendant argues that this inflammatory reference to him as the devil could only tend to arouse the passions of the jury. (See *People v. Johnson* (1987), 119 Ill. 2d 119, 139.) Defendant further. argues that this comment was particularly harmful here where the State's strategy at trial was to convince the jury that because defendant was allegedly involved in other improprieties, he was also guilty here.

We first note that no objection was made to this reference and the issue was not included in a post-trial motion. This issue has thus been waived for review. (*Enoch*, 122 Ill. 2d at 186.) We further do not find this issue subject to plain error review. However, we do note briefly that the *Johnson* court stated that such " '[i]improper remarks generally do not constitute reversible

error unless they result in substantial prejudice to the accused.' [Citations.]" *Johnson*, 119 Ill. 2d at 139-40.

The prosecutor's remark here did not constitute reversible error, as it did not result in substantial prejudice to defendant. We find that the trial court specifically instructed the jury that closing arguments are not evidence and that any statement made during closing argument not based on evidence was to be disregarded. Moreover, the remark was isolated, as the prosecution did not dwell on the reference. Finally, we note, as we have previously, that the evidence in this case was not closely balanced. Thus, the State's reference to defendant as the devil was not reversible as plain error. See *Johnson*, 119 Ill. 2d at 140.

### EFFECTIVENESS OF TRIAL COUNSEL

### VII

Defendant next argues that he was denied the effective assistance of counsel where trial counsel failed to preserve various issues for review through his failure to object or include issues in a post-trial motion. Defendant's argument is without merit. Under *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, defense counsel is ineffective only if: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's error prejudiced the defendant. A court need not decide the first prong of this test, whether counsel's performance was deficient, before analyzing the prejudice component. (See *Enoch*, 122 Ill. 2d at 201-02.) As we have already determined in this opinion, and will determine with subsequent issues, the issues defense counsel failed to preserve are, for the most part, without merit, and did not prejudice defendant.

We also note that on a claim of ineffective assistance of counsel for failing to properly preserve issues for

review, defendant's rights are protected by Supreme Court Rule 615(a), which allows a court to review unpreserved claims of plain error that could reasonably have affected the verdict. (See *People v. Carlson* (1980), 79 Ill. 2d 564, 585.) Thus, defendant's argument is without merit.

## VIII

Defendant next argues that the trial court erred in not appointing new counsel to represent him regarding various *pro se* post-trial claims which challenged trial counsel's effectiveness. This court has recently stated:

> "[T]here is no *per se* rule that new counsel must be appointed every time a defendant presents a *pro se* motion for a new trial alleging ineffective assistance of counsel. [Citations.] Rather, to determine whether new counsel should be appointed, 'the trial court should examine the factual matters underlying the defendant's claim[.] *** [I]f the claim lacks merit or pertains to matters of trial strategy, then no new counsel need be appointed[, but] if the allegations show possible neglect of the case *** new counsel [should] be appointed.' [Citation.]" *People v. Nitz* (1991), 143 Ill. 2d 82, 134.

The first of defendant's *pro se* post-trial motions, filed January 4, 1991, alleged trial counsel was ineffective for: (1) failing to file several pretrial motions, including a motion to quash arrest, motion for preliminary hearing, and a motion to suppress evidence; (2) failing to file "proper post-trial proceedings" in the form of a "proper motion for a new trial"; and (3) misleading and discouraging mitigation witnesses, "caus[ing] them to leave before the hearing even started." Defendant argues that the trial court addressed these arguments in terms of whether they warranted a new trial instead of conducting a preliminary investigation to determine whether the claims were spurious or a matter of trial tactics.

We disagree. The record reveals that the trial court

conducted a preliminary investigation and correctly found the arguments to be without basis and thus spurious. The trial judge stated, before announcing his decision concerning the first of defendant's motions, that he had reviewed the evidence, his notes, and testimony, and had reviewed defendant's motion. The court found no basis for defendant's claims. The trial court also found that defense counsel did not neglect the case and in fact represented defendant "very, very well." The trial court thus did not appoint new counsel for defendant and denied defendant's motion.

Moreover, we find defendant's claims to be spurious. We first note that no motion to quash arrest was filed because defendant turned himself in for McCullough's murder. Defendant was charged for Welch's and Hale's murders while being held for McCullough's murder. There was no motion for a preliminary hearing because defendant was indicted by the grand jury. Moreover, no motion to suppress evidence was filed because no evidence was obtained from defendant or from anywhere he would have had a possessory interest.

Defendant's argument that defense counsel failed to file a proper motion for a new trial is also spurious. Defendant complains that defense counsel's post-trial motion contained "only three substantive arguments" and that "counsel's argument on that motion was one sentence long." However, the trial judge, who observed the entire trial and had reviewed the evidence, his notes, and the testimony, was in a position to determine whether defense counsel's post-trial motion was proper.

Finally, defendant's argument in his *pro se* post-trial motion that defense counsel was ineffective for misleading and discouraging mitigation witnesses is also spurious. Defense counsel informed the court at the sentencing hearing that defendant's family members told him that defendant did not want them testifying on

his behalf. Defendant informed the court that he in fact told these people not to testify. On the next court date, defense counsel informed the court that he had planned to have two mitigation witnesses testify but the two had left to go to work. The State and defense counsel stipulated to these two witnesses' testimony. Defendant made no specific reference to any other witness defense counsel allegedly misled or discouraged from testifying. The trial court thus properly found no basis for defendant's claim.

We note here that the trial court could properly conclude that defendant's claims had no basis and were thus spurious because defendant did not allege anything of which the trial court did not have firsthand knowledge. While defendant did state that defense counsel discouraged and misled mitigation witnesses, something of which the court might not have had firsthand knowledge, defendant did not inform the court who these witnesses were. The trial court was well aware of what occurred at sentencing and properly concluded that defendant had referred in his motion to the witnesses he admitted instructing not to testify. A new defense counsel need not be appointed to investigate and argue every general argument defendant could possibly include in a *pro se* post-trial motion.

Defendant also complains here that defense counsel made no argument for him concerning his first *pro se* motion. However, at the time of the motion, defendant informed the court that he wished to stand on the motion.

Defendant's second *pro se* post-trial motion, filed on February 13, 1991, alleged that the prosecutor had violated his right to a fair trial by making "prejudicial, inflammatory gestures standing over defendant and, making erroneous statements in opening and closing argument designed to arouse prejudice and passions of

the jury." The motion also alleged inconsistencies in Lockett's testimony. The trial court, having observed the prosecutor's behavior at trial, was in a position to know if defendant's claim had any merit. The court found no basis to defendant's assertion. Moreover, defendant's assertion about Lockett's testimony amounts to nothing more than an argument that defendant was not proven guilty beyond a reasonable doubt. Defense counsel raised this issue in his post-trial motion.

## SENTENCING

## IX

Defendant argues that his death sentence should be reversed and the cause remanded for resentencing because the trial court found him eligible for the death penalty under two separate statutory aggravating factors when the State only sought a finding under one of the factors. Defendant argues that the State only asked the court for a finding of death eligibility under section 9—1(b)(3) of the Criminal Code of 1961, the statutory aggravating factor of killing two or more persons. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(3).) However, defendant notes, the court found him eligible for the death penalty not only under section 9—1(b)(3), but also under section 9—1(b)(6), murder during the commission of a forcible felony. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(6).) Defendant, while acknowledging defense counsel's failure to object, concludes that this error requires demand for resentencing under the plain error exception to the waiver rule.

Defendant's assertion, that the State did not seek death eligibility under section 9—1(b)(6), is without merit. Defendant overlooks the following:

"[Prosecutor]: Judge, with regard to the first stage we have here you [ *sic*] Honor can take judicial notice of the verdicts the jury came back with yesterday, that being verdicts of guilty of murder two counts, two victims, Lance

Hale and Avis Welch, *also two counts of armed robbery on both victims, two counts of home invasion, both victims. Statutory aggravating factors are present.*" (Emphasis added.)

## X

Defendant next argues that he was denied a fair capital sentencing hearing where the prosecution was allowed to introduce testimony, exhibits, and argument concerning defendant's gang membership, where the gang evidence was not relevant to the murders, and where the beliefs of the gang were never detailed. In opening arguments at the death penalty hearing, the prosecutor stated without objection:

"You will hear how he was involved in altercations in the jail, struck jail guards, threatened to blow the jail up, how he is involved with gang literature and gangs while in the jail, while he committed both major and minor infractions, which resulted in good time being taken from him, resulted in him being downgraded in scale there to a more dangerous prison, to a more maximum prison."

During the sentencing hearing, the State introduced, without objection, various exhibits and testimony concerning defendant's prison violations. Many of these violations were gang related. Finally, during closing arguments, the prosecutor stated:

"And when you consider whether or not natural life is an appropriate sentence, consider the type of violations. He is passing out gang literature. He was involved in gang recruitment, the gang, his gang, Disciples Street Gang. [Objection sustained.] Well, there was testimony from Mr. [Farkas] and exhibits will bear this out, judge, that he was passing out literature for the Disciples Street Gang. [Objection overruled.] And he was trying to recruit individuals into the Disciples Street Gang. [Objection overruled.]"

Defendant argues the admission of this gang evidence constituted reversible error, for it was not relevant to the murders and because no evidence was

introduced to detail the beliefs or endorsements espoused by defendant's gang. Defendant relies on *Dawson v. Delaware* (1992), 503 U.S. 159, 117 L. Ed. 2d 309, 112 S. Ct. 1093 and concludes that this gang evidence was introduced in violation of his first and fourteenth amendment rights. Defendant further argues that the evidence was not relevant and reliable, the standard enunciated by this court concerning evidence presented at the second stage of a capital hearing. *People v. Free* (1983), 94 Ill. 2d 378, 423.

The United States Supreme Court held in *Dawson* that evidence concerning a defendant's gang affiliation was inadmissible and amounted to constitutional error where the evidence was not linked to the murder committed and had no relevance to the sentencing proceeding. In *Dawson*, evidence of the defendant's membership in the Aryan Brotherhood prison gang was admitted through a stipulation which provided only that the Aryan Brotherhood was a white racist prison gang which originated in California. The stipulation further provided that a separate gang in Delaware called itself the Aryan Brotherhood. The evidence in *Dawson*, the Court found, was admitted only to show the jury that the defendant had morally reprehensible beliefs. Such beliefs, the Court noted, are protected by the first amendment. *Dawson*, 503 U.S. at 160, 117 L. Ed. 2d at 318, 112 S. Ct. at 1098.

The *Dawson* Court went on to note, however, that "the Constitution does not erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment." (*Dawson*, 503 U.S. at 165, 117 L. Ed. 2d at 317, 112 S. Ct. at 1097.) The Court found that the "narrowness of the stipulation [in that case] left the Aryan Brotherhood evidence totally without relevance to Dawson's sentenc-

ing proceeding." (*Dawson*, 503 U.S. at 165, 117 L. Ed. 2d at 317, 112 S. Ct. at 1097.) The Court further noted that "[o]ther evidence concerning a defendant's associations might be relevant in proving other aggravating circumstances." (*Dawson*, 503 U.S. at 166, 117 L. Ed. 2d at 318, 112 S. Ct. at 1098.) Thus, the evidence in *Dawson* was inadmissible because the manner in which it was presented revealed nothing more than the defendant's abstract beliefs.

In the instant case, we first note that defendant failed to object to the prosecutor's opening arguments or to any evidence admitted or testimony concerning his gang activities in prison. Defendant has thus waived those issues for review. (*People v. Patterson* (1992), 154 Ill. 2d 414, 482.) However, because defendant's assertions, if correct, could have deprived him of a fair sentencing hearing, we choose to review the issue under the plain ·error doctrine. We find the evidence and argument in question relevant to show defendant's behavior, violations, and discipline while in prison.

The prosecutor's opening arguments clearly linked defendant's prison gang activities with prison behavior, violations, and discipline. The prosecutor argued that the gang activity, as well as other behavior, resulted in such punishment as loss of good-time credit and a transfer to a more secure prison. Such evidence is clearly admissible as evidence of defendant's character and record in prison and was properly introduced. See *People v. Free* (1983), 94 Ill. 2d 378, 428.

Next, the exhibits and related testimony detailing defendant's gang activities in prison consisted of defendant's disciplinary records. These records showed, *inter alia*, that defendant had been disciplined for participating in illegal gang activity while in prison. This evidence was properly admitted as evidence of defendant's character and behavior while in prison. The

only exhibit which contains a reference to defendant's gang association that is not tied to a prison violation and discipline is People's exhibit number 15, a correctional institution reclassification report. However, the document was relevant in other ways, as it detailed instances of defendant's aggressive prison behavior that was not related to gang activity. We find the reference to defendant's gang membership in People's exhibit number 15 cumulative in light of the other gang evidence properly admitted. We thus find no error here.

We next discuss the prosecution's closing argument. The prosecution first asked the court to consider the type of prison violations in which defendant was involved. Defense counsel objected to this line of argument and the trial court sustained the objection. Any error in the prosecution's argument would have been cured by the trial court's sustaining the objection. (See *Jones*, 153 Ill. 2d at 161.) The prosecution then noted that defendant was involved in passing out gang literature and in trying to recruit individuals into the gang. Defendant's objections here were overruled. We find no error here because the gang activity to which the prosecutor referred involved violations of prison rules and resulted in discipline. Moreover, we note that a trial court is presumed to have considered only proper evidence and to have disregarded inadmissible evidence in sentencing a defendant. (*People v. Hall* (1986), 114 Ill. 2d 376, 419.) There is no evidence here to rebut this presumption. The trial court made no reference to defendant's gang membership during sentencing. The court did make reference, however, to defendant's prison conduct, which was entirely proper.

Thus, we conclude that, unlike in *Dawson*, the evidence of defendant's gang affiliation was properly admitted here to show his behavior, violations, and discipline in prison. The information was not admitted for the sole purpose of showing defendant's abstract beliefs.

## XI

Defendant next argues that he was denied a fair capital sentencing hearing because the trial court considered whether defendant could be rehabilitated or restored to useful citizenship. After noting that it had reviewed the facts and circumstances of the case along with defendant's prior criminal history and the nature and circumstances of his prior history, the sentencing court found the mitigating factor of whether a defendant may be rehabilitated or restored to useful citizenship not applicable. Defendant argues that because he could never be released into society again, being eligible to receive only natural life imprisonment or the death penalty, it would be impossible for him to be rehabilitated or restored to useful citizenship. Thus, defendant concludes, the trial court effectively used as aggravation his lack of rehabilitative potential, a factor defendant argues is wholly improper.

We first note that defendant failed to include this issue in a post-trial motion. The issue thus has been waived for review. (*Enoch*, 122 Ill. 2d at 186.) We further note that the sentencing court did not err. Accepting for the purposes of this discussion defendant's argument that the trial court in fact used this as an aggravating factor, we note:

> "In determining the appropriate sentence, the trial judge is to consider all matters reflecting upon the defendant's personality, propensities, purposes, tendencies, and indeed every aspect of his life relevant to the sentencing proceeding. [Citations.]" (*People v. Barrow* (1989), 133 Ill. 2d 226, 281.)

Moreover, "[a]s a general proposition, any evidence regarding the defendant's character is relevant and admissible." (*Barrow*, 133 Ill. 2d at 282.) The evidence that defendant could not be rehabilitated or restored to useful citizenship is evidence regarding defendant's character and was thus relevant and admissible.

## XII

Defendant next argues that his right to a jury for capital sentencing was constitutionally invalid under the eighth and fourteenth amendments to the United States Constitution because he was unaware that a contrary vote by a single juror would preclude a death sentence. Defendant argues that at no point in the court's admonishment concerning jury waiver for sentencing did the court inform him that a single juror could spare his life by voting against the death penalty.

We first note that the trial court did inform defendant that the jury would have to unanimously agree to impose a death sentence, and defendant informed the court that he understood. Moreover, as defendant himself notes, this court has previously rejected this argument. *People v. Ruiz* (1989), 132 Ill. 2d 1, 20-21.

## CONSTITUTIONALITY OF THE ILLINOIS DEATH PENALTY STATUTE

### XIII

Defendant first argues that the Illinois death penalty statute is violative of the eighth and fourteenth amendments to the United States Constitution because it places a burden of proof on the defendant which precludes meaningful consideration of mitigation. This argument has been rejected by this court in *People v. Bean* (1990), 137 Ill. 2d 65, and by the Federal court in *Silagy v. Peters* (7th Cir. 1990), 905 F.2d 986.

### XIV

Defendant's final contention is that the Illinois death penalty statute is unconstitutional under the eighth and fourteenth amendments because it does not sufficiently minimize the risk of arbitrarily or capriciously imposed death sentences. Defendant cites a list of attacks under this argument which this court has previously rejected

and asks this court to reconsider these arguments individually as well as collectively. We decline and note that this court has found Illinois' death penalty statute to ensure adequate safeguards to prevent the arbitrary and capricious imposition of the death penalty. *People v. Kubat* (1983), 94 Ill. 2d 437, 503-04.

## CONCLUSION

For the foregoing reasons, we affirm defendant's convictions and death sentences. The clerk of this court is directed to enter an order setting Tuesday, May 17, 1994, as the date on which the sentence of death entered by the circuit court of Cook County is to be carried out. Defendant is to be executed in the manner provided by law. (Ill. Rev. Stat. 1991, ch. 38, par. 119—5.) The clerk of this court is to send a certified copy of this mandate to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution where defendant is confined.

*Affirmed.*